# Alpern's Appeal.

*Municipalities—Zoning ordinance—Building in commercial zone —Building to line of street—Front yards—Side yards—Commercial buildings.*

1. Where a zoning ordinance requires that dwellings, but not commercial buildings, shall have front and side yards, and provides that in a commercial district "a building other than a garage may be built out to the front lot line provided the entire frontage of the side of the street between two intersecting streets on which such building is located, is in a commercial district," an automobile salesroom not a garage may be built on a corner lot of a block in a commercial district out to the front lot line of each intersecting street, where the entire frontage of one of the streets on which the building is located is not in a commercial district.

2. In such case the zoning ordinance does not require that there shall be two front yards, one on each of the abutting highways.

3. The zoning ordinance under consideration which provides that a vehicular entrance to a garage shall be set back fifteen feet from the building line, does not apply to an automobile showroom, where only ordinary repair work is done.

Argued September 29, 1927.  Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal. No. 137, March T., 1927, by City of Pittsburgh, from judgment of C. P. Allegheny Co., April T., 1927, No. 147, affirming decision of zoning board, in appeal of Bernard Alpern.  Affirmed.

Appeal from decision of zoning board.  Before MARTIN, J.

The opinion of the Supreme Court states the facts.

Decision of zoning board affirmed.  Bernard Alpern appealed.

*Error assigned*, inter alia, was judgment, quoting record.

*Simon T. Patterson*, with him *J. B. Alpern*, for appellant.

*H. Stewart Dunn*, Assistant City Solicitor, with him *Chas. A. Waldschmidt*, City Solicitor, and *Thomas M. Benner*, First Assistant City Solicitor for City of Pittsburgh.

*F. C. McGirr*, for intervening appellee.

OPINION BY MR. JUSTICE SADLER, November 28, 1927:

A zoning ordinance, which has received judicial approval insofar as the general plan is concerned (Ward's App., 289 Pa. 458), though held unenforceable as to certain details (White's App., 287 Pa. 259), was passed for the promotion of the public health, safety and general welfare of the citizens of Pittsburgh, whereby the city was divided into residential, commercial and indus-

trial districts, and the character of the buildings and the lot space occupied by them subjected to regulation. Five distinct classifications were established, and we are now concerned only with this feature of the ordinance. Definite and uniform rules were made applicable to each, having partly in view the room to be devoted to the use of the individual family in buildings which might be located thereon. In the first district, a minimum requirement of lot area of 4,000 square feet was made necessary, and less for other properties, which were placed in the second, third, fourth and fifth divisions. As to the first two classes, provision was made, in each instance, for front and side yards, requiring open spaces on both intersecting streets in the case of corner lots. For the remaining more congested districts, no duty to set aside an area for the latter purpose is imposed in the case of corners, though there must be front and rear yards, and also side courts in certain cases. Section 34, carried in terms into the one following, relating to the fourth division district, and with which class we are at present concerned, expressly provides: "A building not used in whole or in part as a dwelling shall not require a side yard."

In the same class of districts open spaces are provided in these words: "There shall be a front yard having a depth of not less than fifteen (15) feet," and a rear yard "not less than fifteen (15) per cent of the depth of the lot, but need not exceed fifteen (15) feet." In commercial districts within such division (and we are dealing with a section marked for such use), a building other than a garage may be built out to the front lot line, provided the entire frontage of the side of the street, on which such structure is located, between the two intersecting streets, is in a commercial district: Section 41. By the street plan of the city, duly adopted by resolution of councils, Baum Boulevard, on which the building now in dispute will be erected, is designated as a major highway, and, between Rebecca Street and Atlantic Avenue, intersecting on the east and west,

and, indeed, for its entire length, is marked on the zoning map as commercial. Insofar, therefore, as buildings front upon it, the provisions of section 41 of the ordinance, permitting construction on the front lot line, applies.

Alpern, the appellant, is the owner of a residence facing on Atlantic Avenue, and, with an adjoining property to the north, included within a commercial district of the fourth division. Beyond, within the same block, to Harriet Street, the class is residential. Adjoining to the south of his house, and extending for 128 feet along Atlantic Avenue to the corner of Baum Boulevard, is the property of Page & Lawler, which has a frontage of 40 feet on the latter highway. Its owners desired to construct thereon an automobile sales room, facing on the boulevard, and made application for permission to build as required by the zoning ordinance. This was refused, because no setback from Atlantic Avenue was provided, nor a rear yard, but, on appeal, permission was granted to build as requested, provided 15 feet at the back, where the Alpern property adjoined, was allowed to remain open, as required by section 35, and the owners further agreed that specified construction, for the protection of the public, be installed, at a proposed entrance on the Atlantic Avenue side. The board of appeals interpreted the zoning ordinance as requiring a setback on Atlantic Avenue of 30 feet,—an evident error, since it could not have been, under any circumstances, in excess of fifteen feet,—but permitted what it deemed a variation from the ordinance, so that the building could be erected flush with the city street line. The court of common pleas, before whom the matter was brought for review, likewise approved the proposed construction, not on the ground that the circumstances called for any variation of the regulations provided in the ordinance, but because its terms permitted the occupation of the ground as contemplated, and it is from its order that the present appeal is taken.

Appellant contends that the lot is to be considered as having two frontages, one on Baum Boulevard and the other on Atlantic Avenue. Admittedly, the ground may be occupied to the front line on the former, since it is in the commercial district, which extends to the intersecting streets on both sides. It is urged, that this is not true of the portion facing Atlantic Avenue, as only a small portion of the highway between the north and south intersecting streets, Harriet and Baum Boulevard is designated for commercial use, the greater part being classed as residential. It is insisted, that the exception provided by section 41 has no application to that frontage, and that the building must be set back for fifteen feet along the avenue. The paragraph referred to, and depended upon by appellant in support of the position now taken, does not require a recession where the conditions therein set forth are nonexistent, or make this necessary in such case, but does provide for an exceptional situation, where there may be an omission of a front yard and a building to the street boundary.

We must examine other parts of the ordinance to determine whether, under circumstances such as here appear, two front yards are required, one on each of the abutting highways. It is to be noticed that special provision is made for first- and second-class districts where corner lots are involved, and it is directed that, in the two districts mentioned, and those only, there shall be a setback on both of the intersecting streets, but the property now in question is not embraced in either of these divisions. That the omission of this requirement, as to property so located in districts of the other three classes, was not due to oversight in making regulations for lots of that character, is evidenced by the insertion of another rule relating thereto in the provisions for all five districts. To hold that there are two fronts, within the meaning of the ordinance, on this corner lot would be to require two front yards, though the one on the boule-

vard would, in this instance, be excused because of the provisions of section 41, and, necessarily, two rear yards, so that, on the avenue side, the building would be recessed 15 feet, and erected not less than 6 nor more than 15 feet from the property to the rear on the east for the entire distance from the Alpern lot to the boulevard line.

The frontage, as contemplated by the zoning legislation, except as otherwise provided, is clearly that facing the main commercially developed thoroughfare, upon which the building is to have its principal entrance, and its depth, defined in section 3 as "the mean horizontal distance between the front lot line and the rear lot line," is the one hundred and twenty-eight feet extending to the Alpern property, which marks the rear of the Page & Lawler lot, and from which the zoning board has taken fifteen feet for a rear yard. The east and west lines, under the terms used in the ordinance, are sides, and any space reserved along them must be treated as side yards, and the regulations applicable thereto alone enforced. As already noticed, none are required under circumstances such as here appear, since the structure is not for use as a dwelling. Where council deemed it advisable to require yards or set-offs on both fronts of lots abutting on two intersecting streets, specific provision was made to effect that end. It saw fit, to make this necessary only in districts of the first and second class, and not in those of the fourth. No side yard being required on Atlantic Avenue, the building may be constructed to the line thereof, as it is to be used solely for business purposes. It may likewise be built to the street line on Baum Boulevard, as already noticed, because the necessity of a recession on that front has been excused by the terms of section 41. The right to erect, as proposed, exists under the terms of the ordinance, as held by the court below, and, in granting this permission, no variation from the regulations by the zoning board, as allowable in certain exceptional instances, was required.

It is further objected that the contemplated building is a garage, and, under the terms of section 14, paragraph b, it is necessary that the vehicular entrance door on Atlantic Avenue be set back a distance of 15 feet from the street line, leaving an open and unoccupied space for the height of the first story. The zoning board, for the public benefit, made certain stipulations as to the manner of construction in this case, and these were agreed to by the owner. The word "garage," as defined in section 3, does not include "exhibition or show rooms for storage of new cars for sale." Section 14, refers only to a major garage in commercial districts, and, according to the testimony, the proposed building is not of that character. The facilities here to be furnished are merely incidental to the sale of automobiles, and section 15, paragraph a, is applicable, if the present structure comes within the meaning of either. The only service to be performed is ordinary repair work, and the adaptation of a building to such use in commercial districts is permissible where "said shops or facilities are necessary or supplementary to a principal use of the premises, which principal use is concerned with the automobile business." There was no power to require the setting back of the entrance 15 feet from Atlantic Avenue, and even the conditions which were imposed by the zoning board for the protection of pedestrians were subject to voluntary assent by the builder.

We are convinced that the Page & Lawler property cannot be held to have two frontages within the meaning of the ordinance, but has one only, located on Baum Boulevard, which comes within the exception provided by section 41, and a side on Atlantic Avenue, which does not require a setback, the building not being intended for dwelling purposes; and, further, that there was no right to require the entrance on the latter to be recessed for fifteen feet, as demanded.

The order of the court below is affirmed at the cost of appellant.