## Brown (et al., Appellants,) *v.* Levin et al.

Argued January 15, 1929. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*James R. Wilson,* with him *Albert J. Williams, John Martin Doyle* and *William J. Wilson,* for appellants.— The general principles involved require a construction which will permit the free use of the property: Meigs v. Lewis, 164 Pa. 597; St. Andrew's Lutheran Church, 67 Pa. 512.

The restrictions as construed in the court below are confiscatory.

The construction by the court below is contrary to the general purpose of the framer of the restrictions as implied from the circumstances.

The authorities sustain the contention of the appellants: De Sano v. Earle, 273 Pa. 265; Hoffman v. Parker, 239 Pa. 398.

*Paul Lane Ives*, with him *J. Borton Weeks*, of *Taylor, Chadwick & Weeks*, for appellees.—The express terms of the restrictions support the construction placed upon them by the court below.

Where the interpretation of a building restriction would render the covenant of no practical avail, such interpretation will not be adopted where another entirely feasible one is at hand: Rabinowitz v. Rosen, 269 Pa. 482.

OPINION BY MR. JUSTICE WALLING, February 4, 1929:

In the spring of 1923, a corporation known as the Beverly Hills Realty Company, laid out and plotted a tract of land in Upper Darby Township, Delaware County, called Beverly Hills. A detailed plot showing lots, roads, avenues, boulevards, etc., was duly recorded, also containing comprehensive building restrictions. The Philadelphia & Garretford Electric Railway, forming the southern boundary of this property, has a station thereon and affords transportation facilities to and from Philadelphia. On the south of and parallel with this railway is a public highway called the Garrett Road. Within the lines of the plot and along its southern end, for a distance paralleling and adjoining the railway, is a public highway known as Bywood Avenue, which, as it extends westerly, bears to the north and becomes Beverly Boulevard.

The Beverly Hills property, as plotted, is divided into seventeen subdivisions, lettered from "A" to "Q," inclu-

sive. Each subdivision is again divided into lots, designated by serial numbers. Subdivisions A, B, and C abut on the north side of Bywood Avenue. There are also three public highways, viz., Midvale Road, Broadview Road and Netherwood Road (herein called intersecting streets), extending northerly from Bywood Avenue through the property and separating, inter alia, the three above named subdivisions. There are twenty lots fronting on Bywood Avenue in these three subdivisions, five being corner lots, and each lot being of the approximate width of twenty-five feet.

The first clause of the building restrictions excludes from the development any offensive use or occupation, while the second clause says: "No part of the portion of said tract covered by these restrictions and limitations shall be used for any commercial, business, or manufacturing purposes of any kind or nature whatsoever; however, stores may be constructed on lots abutting on Bywood Avenue, as shown on and by said official Lot Plan, and business that does not conflict with the restrictions and limitations contained in the preceding clause may be conducted therein." Clause seventh permits, under certain restrictions, the erection of garages for strictly private use. And the eighth clause, here controlling, is, inter alia: "All buildings erected on lots abutting on Bywood Avenue as shown on said official Lot Plan must have cellars, must be at least two stories in height, must not have what are commonly known as flat roofs, and no such buildings or any part thereof (excepting steps, porches, bay or oriel windows, and other usual projections as aforesaid) shall be built, constructed, or maintained nearer the curb line than twenty-five feet and no porch shall extend more than ten feet beyond the established building line;......garages, however, may be built, constructed, and maintained on said lots in accordance with the terms of the seventh clause hereof."

Petitioners (herein called the plaintiffs) own corner lots abutting on Bywood Avenue, within the three subdivisions above mentioned; while the defendants own numerous other lots in various sections of the development. The plaintiffs contended that the restriction in clause eight requiring that all buildings be set back twenty-five feet from the curb line applied only to such line in Bywood Avenue, while the defendants as strenuously contended that it applied equally to the curb lines of the intersecting streets. As the most inexpensive and expeditious method of adjusting the dispute, the trial court properly entertained the petition for a declaratory judgment, under the Act of June 18, 1923, P. L. 840. In an extended opinion, the trial court sustained the defendants' contention and enjoined the plaintiffs from building upon any part of corner lots within twenty-five feet of the curb line of Bywood Avenue or within twenty-five feet of the curb line of any intersecting street. Therefrom plaintiffs brought these appeals.

In our opinion the judgment is error in so far as it enjoins plaintiffs from building within twenty-five feet of the curb lines of intersecting streets. An owner has the common right to build upon any part of his property, and while restrictions thereon, based upon such circumstances as are here disclosed, are valid, they must be strictly construed (see De Sano v. Earle, 273 Pa. 265; Johnson v. Jones, 244 Pa. 387; Klaer v. Ridgway, 86 Pa. 529), and every doubt resolved against the restriction. As stated by Mr. Justice KEPHART, speaking for the court, in Satterthwait et al. v. Gibbs et al., 288 Pa. 428, 431: "Covenants restricting the use of land are construed most strictly against one claiming their benefit and in favor of free and unrestricted use of property; a violation of the covenant occurs only when there is a plain disregard of the limitations imposed by its express words." In Fortesque v. Carroll, 76 N. J. Eq. 583, Mr. Justice GARRISON, speaking for the court, says: "It is well settled that, in cases where the right of a com-

plainant to relief by the enforcement of a restrictive covenant is doubtful, 'to doubt is to deny.'" The clause imposing the restriction in question in the instant case names but one street and one curb line. Manifestly the words "the curb line" apply to that of the street named in the restriction (Bywood Avenue); but it would require too liberal a construction to extend those words so as to embrace the curb lines of other streets adjoining the lots in question. Had the owners intended to embrace the curb lines of other streets they could easily have so stated. As said by the Supreme Court of Errors of Connecticut, in Rhinehart v. Leitch, 140 Atl. 763, 764: "There is significance in the very phraseology of this reservation. Of necessity, the claim of the plaintiff must be, not that the word 'fronts' refers solely to the side of the defendant's premises which abuts upon Third Street, but to both that side and the Bedford Street side. Yet had that been the intent of the parties, it would have been naturally expressed, not by saying 'of the street line on which said lot fronts,' but 'of the street line or lines' on which it fronts, or some other more precise phraseology would have been used." In Turney .v. Shriver, 269 Ill. 164, 110 N. E. 708, each side of the corner lot was expressly restricted. Again, Bywood Avenue is the only street in the entire development dedicated to commercial purposes, and on such street one would not be as apt to look for set backs from intersecting streets. In other words, business places are more usually erected flush with building lines, while dwellings are usually set back.

Moreover, the lots in this development were generally plotted of the width of twenty-five feet and were restricted to sales in pairs, except on Bywood Avenue where they could be sold singly. This exception strongly tends to negative an intent to restrict buildings to twenty-five feet from the curb lines of side streets. Because of the sidewalks, the curbs are ten feet from the building line, so, if the owner of a lot twenty-five feet

in width must recede fifteen feet from the latter line, he would have only a width of ten feet upon which to build and his lot would be of little if any value. A similar reason is given for refusing to apply the restriction to the side of corner lots in Rhinehart v. Leitch, supra. We are not prepared to hold that the Beverly Hills Realty Company intended thus to practically confiscate corner lots.

There are a number of restrictions, for example, that dwellings must be detached, must be set back thirty-five feet from the curb, must leave certain open spaces on the sides and in the rear, and must cost not less than certain amounts, etc., applicable to the balance of the development which are omitted from the lots abutting on Bywood Avenue. This avenue, although not necessarily devoted exclusively to business purposes, is put in a class by itself and its utility must compensate for its lack of harmony with the surroundings. True, if the corner lots thereon are built upon to the side property line, either by apartment houses or stores it will to some extent mar the harmony of the development. In any event there would be some lack of uniformity as dwellings on the intersecting streets must set back thirty-five feet from the curb. So far as relates to air, light and sunshine, the proposed structures on the corner lots in question will very slightly affect the general development.

No question exactly parallel to the one here presented seems to have been passed upon by an appellate court in this State. In the opinion by Mr. Justice SADLER, in Alpern's App., 291 Pa. 150, however, the set back restriction under a zoning ordinance was confined to one front of a corner lot. While in Guar. Tr. & Safe Dep. Co. v. The City of Phila., 30 Leg. Int. 240, this court held that section 6 of the Act of April 21, 1855, P. L. 265, 3 Purdon's Digest (13th ed.) 2826, providing that no building should be erected fronting on a street less than twenty feet wide did not apply to a street or alley at the side of

the building, adopting the suggestion of Honorable ELI K. PRICE that it was the front and not the flank of the building at which the statute was aimed. The trend of judicial construction elsewhere is to confine the building restrictions of corner lots to a single frontage, so far as not manifestly inconsistent with the language of the restriction. This is especially so in New Jersey where the Court of Errors and Appeals have in recent years repeatedly reversed the lower courts for extending such restrictions to both fronts of corner lots. In Howland v. Andrus, 81 N. J. Eq. 177, 86 Atl. 391, the court says: "But even if this [the restriction of the covenant to a single frontage] is not perfectly clear it certainly cannot be said that the construction contended for by the complainant is any more certain, particularly in view of the fact that it is entirely settled that every doubt and ambiguity in the language of a covenant restricting an owner's use of his property must be resolved in favor of the owner's right. Courts of equity do not aid one man to restrict another in the uses to which he may lawfully put his property unless the right to such aid is clear." This case reversed Howland v. Andrus, 80 N. J. Eq. 276, 83 Atl. 982. While in Scull v. Eilenberg (N. J. Eq.), 121 Atl. 788, the same court reversed the lower court and expressly overruled Waters v. Collins, 70 Atl. 984. A case seemingly to the contrary is Adams v. Howell, 108 N. Y. S. 945, where "the front street line of the lot" was held to embrace both streets of a corner lot on which a dwelling was being erected.

The declaratory judgment is reversed and it is adjudged that the restriction in question requiring that buildings be erected twenty-five feet from the curb line is inapplicable to the side curb lines of property abutting on Bywood Avenue. The costs to be divided equally between plaintiffs and defendants.