## Hamilton et ux. v. McKinley Fire Company No. 1 et al.

*Julian W. Barnard*, for plaintiffs.

*David E. Groshens*, for defendants.

DANNEHOWER, J., January 15, 1945. — Plaintiffs, property owners, by this bill in equity, seek to enjoin defendants from completing the erection of a war memorial on the premises of the McKinley Fire Company No. 1, Cadwalader Avenue, McKinley, Abington Township, Montgomery County, Pa., and to compel the removal of that portion of the memorial already erected, for the reasons that it constitutes a violation of restrictive covenants contained in their deed, a violation of the Abington Township zoning ordinance, and also constitutes a nuisance. A final hearing was held on bill and answer and testimony was heard.

The bill and answer raise the following issues: (1) Is said war memorial as partially erected and planned a building within the meaning of the restrictive covenant and a violation thereof? (2) Does said war memorial violate the township zoning ordinance, and does equity have jurisdiction to restrain its erection if it does? (3) Are plaintiffs guilty of laches or subject to equitable estoppel? (4) Are plaintiffs entitled to equitable relief?

From the pleadings, testimony, and exhibits there are made the following

## Findings of fact

1. Plaintiffs, Howard B. Hamilton and Anna G. Hamilton, his wife, are the owners of a lot of land improved by a single detached residence located at and designated as 8525 Cadwalader Avenue (formerly Ogontz Avenue) in Abington Township, Montgomery County, Pa. The land of plaintiffs is bounded by the southerly side of Cadwalader Avenue, contains in front or breadth thereon 60 feet and extends of that width 150 feet.

2. Defendant, McKinley Fire Company No. 1, is a corporation of the first class, a volunteer fire company, and owns a lot of land consisting of 60 feet in frontage, bounded on the north by the southerly side of Cadwalader Avenue (formerly Ogontz Avenue) and on the east by the property hereinbefore mentioned owned by plaintiffs. The property of defendant is improved by the erection thereon of a building for the housing of its fire apparatus and the holding of meetings of its members and such other activities as are engaged in by defendants.

3. Both of said adjoining properties, the property owned by plaintiffs and the property owned by defendant, McKinley Fire Company No. 1, are subject to building restrictions and conditions which read as follows:

"Under and subject to the restriction that all buildings upon the said lots shall be erected not less than fifteen feet back from the fence line and that the said grantee his heirs or assigns shall not at any time hereafter erect or cause to be erected or built upon the premises above described or any part thereof any building or buildings to be used as a hotel, tavern, drinking saloon, tannery, slaughterhouse, skin dressing or bone boiling establishment, glue, soap, candle,

starch, varnish or lampblack manufactory or building for other offensive use or occupation, and that if at any time hereafter any building shall be put, placed, erected, built, used or occupied upon the premises above described or any part thereof contrary to the true intent and meaning of these presents and if the said grantee his heirs or assigns shall fail to remove the same on receiving thirty days' notice in writing so to do from the said The Ogontz Land and Improvement Company or its successors or from any other owner of any other lot upon said plan then and in such case it shall and may be lawful for the said The Ogontz Land and Improvement Company or its successors or for any of the said owners of any of the said lots on said plan with their workmen, tools and implements to enter into and upon the hereby granted premises and into the buildings thereon erected and at the cost of the said grantee his heirs or assigns, owners or occupiers of the hereby granted premises to tear down remove and abate all such buildings or manufactories as may be erected or constructed or used contrary to the true intent and meaning of these presents and without being subject to any writ, action or proceeding, civil or criminal, for anything reasonably done by them or any of them by reason thereof or for any entry therein for the purpose aforesaid anything hereinbefore contained to the contrary thereof notwithstanding."

4. The building restrictions mentioned in the foregoing finding were uniformly imposed upon all of the lots constituting a portion of the "tract" out of which the land of both plaintiffs and defendants came by reason of the fact that Ogontz Land & Improvement Company, a corporation, on February 27, 1890, acquired a large tract of land which it proceeded to develop and lay out in streets and building lots, and to sell and convey to prospective home builders. Each and every one of the deeds of conveyance by which Ogontz Land & Improvement Company conveyed the building

lots on said tract as sold contained the restrictions quoted.

5. The location of the "fence line" mentioned in the restrictions is not definitely fixed, but the property owners have uniformly treated the side of the street on which their lots front as the line from which the 15-foot set-back should be measured.

6. The corporate defendant occupies its said premises for the storage of fire-fighting equipment, for company meetings, for public dances, social functions, and the like. On the rear sideline dividing the premises of the corporate defendant from the premises of plaintiffs are erected seven one-car garages which the corporate defendant rents for a consideration for private use.

7. The buildings on the properties of plaintiffs and of defendant fire company, as well as the buildings on both sides of the street in the same block, are set back a nearly uniform distance of 15 feet from the fence line.

8. The properties of plaintiffs and of defendant are located near the middle of the block, which block extends approximately nine hundred feet in length.

9. The nature of the community in which the land of plaintiffs and defendant is located is preponderantly residential.

10. Defendant fire company has had erected for a number of years in its front yard and within 15 feet of the fence line a lofty flagpole.

11. Throughout the entire area which is subject to the restriction there are a considerable number of buildings which do not observe the specified "set-back".

12. As early as July 1943 the members of defendant corporation began to discuss and explore the project of soliciting public subscriptions for a public memorial in honor of the residents of McKinley who served in World War I and World War II.

13. Under the leadership of Edwin H. Geissler, second defendant, who is also secretary of the fire company and township commissioner representing McKin-

ley Ward 4, and sometime prior to July 1944, a committee of the members of the corporate defendant was appointed to collect funds by public subscription for the proposed war memorial.

14. Sometime prior to July 31, 1944, the said committee circulated a written appeal for funds for the proposed war memorial, a copy of which was received by plaintiffs.

15. Plaintiffs contributed money toward the expense and cost of the proposed war memorial on July 31, 1944.

16. The public subscription for funds to meet the cost and expense of the proposed war memorial began in July 1944, and up to the institution of this proceeding 417 residents of the McKinley Ward donated the sum of $881.08.

17. The proposed war memorial will bear the names of 233 veterans and service men and women.

18. At least 69 of the veterans and servicemen whose names will be inscribed on the proposed war memorial are or were members of defendant corporation.

19. At the time plaintiff, Howard B. Hamilton, made his contribution to said fund he did not know the proposed location of the proposed memorial, nor, aside from the fact that it was intended to be a permanent memorial, did he at that time know any of the proposed details as to its construction.

20. The final draft of the plans of the proposed memorial was produced to the fire company at its meeting on September 26, 1944, and approved, and the foundations or the digging thereof for the memorial was commenced on the land on September 28, 1944.

21. On or about September 20, 1944, plaintiff husband observed measurements being made for the location of the foundation. On this occasion he made inquiry as to the possible violation of the restriction, but other than that made no protest.

22. Subsequently, on or about October 1, 1944, concrete foundations were poured and some bricks were

delivered upon the premises, and plaintiff, Howard B. Hamilton, learned that it was proposed to be a permanent structure and learned definitely of the proposed location, and on October 10, 1944, he wrote and addressed a letter of protest to the township commissioners, which letter was discussed at the meeting of the board of township commissioners in the presence of defendant, Edwin H. Geissler, on October 12, 1944, and the township commissioners decided to seek the opinion of their solicitor.

23. The following Sunday, October 15, 1944, bricklayers worked on the job and actually constructed the proposed memorial approximately five feet of its proposed height of 8 feet 7½ inches.

24. Within a day or two after October 15, 1944, on which date plaintiffs saw the actual construction of the brick work start, they consulted counsel and actually retained counsel on October 18, 1944, and their counsel did on the same day write and mail by registered mail a letter to the McKinley Fire Company No. 1 advising them of his intention to act in behalf of plaintiffs and to institute an equitable proceeding.

25. The notice mentioned in the preceding finding of fact was the first notice of plaintiffs' protest given directly to either of the defendants, although the individual defendant had knowledge of a protest made to the township commissioners.

26. The memorial is proposed to be constructed of brick with two offset wings containing a flower bed in the center of which there will be three panels. The memorial will have on either side a pair of bronze eagles carrying the standards of the four services, and it is proposed to have in the center the great seal of the United States. On all edges of the bricks will be a 2½-inch thick limestone coping.

27. The proposed memorial will be of solid, permanent construction and is proposed to be 10 feet 6 inches wide by 8 feet 7½ inches in height.

28. The proposed memorial is located in the northeasterly corner of the lot of land owned by defendant McKinley Fire Company No. 1, facing diagonally toward the street, the nearest portion to the street being a corner of said memorial nearest to the property of plaintiffs, which point is, as appears by the plan, approximately three feet back from the property line or side of the street.

29. At the nearest point the proposed memorial would be approximately one foot from the party line dividing the land of defendant fire company from the land of plaintiffs.

30. The entire memorial as proposed would be located within 15 feet of the side of Cadwalader Avenue.

31. Because of the diagonal at which the proposed memorial is located and because of the distance the Hamilton dwelling sits back from the side of the street, the practical effect of the proposed memorial would be to partially obstruct plaintiffs' view up the street in a westerly direction from the porch or first floor of their home.

32. On the northwest corner of the Hamilton home on the first floor is located their living room, and near the corner of the house is a diagonal or angular window near which plaintiff, Howard B. Hamilton, was accustomed to sit and look up the street. The view from this window would be at least partly obstructed by the proposed memorial.

33. In the front portion of the Hamilton home is an enclosed porch which members of the Hamilton family were accustomed to sit on in the summertime. The view up the street to the west of this porch would be at least partly obstructed by the proposed memorial.

34. On December 10, 1936, the Township of Abington approved and adopted a zoning ordinance under authority of the General Zoning Law. The locality of the properties in question is therein zoned as class "H" residential requiring that "there shall be a front yard,

the depth of which shall be at least twenty feet, provided, etc. . . ."

35. The word "building" is defined in the zoning ordinance as "the word 'building' includes the word 'structure' ". Yard is defined as "an open, unoccupied space on the same lot with a building open and unobstructed from the ground to the sky".

36. Plaintiffs acted with reasonable promptness after they learned and understood the location and design of said war memorial.

The questions of fact and law involved are treated in the form of the following

### Discussion

Plaintiffs' principal contention is that, since said war memorial is located less than 15 feet back of the fence line and is a building within the meaning and intent of the building restrictions contained in the deeds, equity should grant relief and order its removal. It is also contended that the war memorial or monument violates the Abington Township zoning ordinance, which provides that the minimum depth of front yards in said residential district shall be 20 feet.

Defendants contend that: (1) Said proposed memorial is not a building within the meaning of the building restrictions and not a violation thereof; (2) it is not a building or structure within the meaning of the zoning ordinance; (3) the "set-back" restrictions have been violated in so many instances and the character of the neighborhood has so changed in the 54 years since the deed restrictions were imposed that they have been abandoned and are of no substantial value; (4) as plaintiffs have jointly subscribed and donated to the fund for erecting said memorial they are estopped to enjoin the project; and (5) plaintiffs are guilty of laches.

The erection of the proposed war memorial or monument constructed of brick 10 feet 6 inches wide and

8 feet 7½ inches high and located within 15 feet of the fence line is not a building within the meaning and intent of the deed restrictions, which provide that "all buildings . . . shall be erected not less than fifteen feet back of the fence line . . ." It must be borne in mind in all cases involving the interpretation, construction, and enforcement of building restrictions that such reservations upon the use of land are never favored by law, as the law favors free and unrestricted use of real estate. Consequently, covenants imposing restrictions and fixing limitations upon the use of land must be strictly construed and are not to be extended or enlarged by implication or inference: All Saints Church in Wynnewood v. Fuchs et al., 36 D. & C. 590 (1939), Satterthwait et al. v. Gibbs et al., 288 Pa. 428 (1927), Brown et al. v. Levin et al., 295 Pa. 530 (1929), and Peirce v. Kelner, 304 Pa. 509 (1931).

Convincing authorities support the conclusion that a war memorial or monument is not a building within the meaning of the restriction.

Webster's New International Dictionary (2nd ed.), defines "building" as "that which is built; specif.: a As now generally used, a fabric or edifice, framed or constructed, designed to stand more or less permanently, and covering a space of land, for use as a dwelling, storehouse, factory, shelter for beasts, or some other useful purpose. *Building* in this sense does not include a mere wall, fence, monument, hoarding or similar structure, although designed for permanent use where it stands. . .".

The Abington Township Building Code of 1941 defines a building as "a structure built for the support, shelter and enclosure of persons, animals, chattels or movable property of any kind, etc."

In Society of the Cincinnati's Appeal, 154 Pa. 621 (1893), a large equestrian statue of George Washington was held not to be a building within the meaning of a building restriction on Independence Square, Phila-

delphia, Pa., which provided that (p. 635) " 'no part of said ground . . . be made use of for erecting any sort of buildings thereon, but that the same shall be and remain a public green and walk forever' ".

In Spangler et al. v. Leitheiser et al., 182 Pa. 277 (1897), a soldiers' monument was held not to be a building within the meaning of a statute requiring that contracts for a building should be let in a certain way.

In Nowell v. Boston Academy of Notre Dame, 130 Mass. 209 (1881), the court defined "building" as "a structure or edifice enclosing a space within its walls and usually covered by a roof . . ." and held that a brick wall six feet high with a coping not over one foot high was not a building within the meaning of the covenant against the erection of a building within a certain number of feet of a street.

A similar holding as to a wall may be found in Clark v. Lee, 185 Mass. 223 (1904).

It is true there are some decisions which might be cited as contrary authority, but they can be distinguished. For instance, in Neff et al. v. Hartz et al., 43 Montg. 211 (1927), two large gateways or portals were held to be buildings in violation of a building restriction. However, these were large roofed structures and provided benches for the accommodation of persons. Again, in Buck et al. v. Adams et al., 45 N. J. Eq. 552 (1889), an 18-foot high frame pavilion open on all sides but having a roof was held to be a building and violated a building line restriction.

Therefore, under the evidence in the present case and considering all the authorities, it is clear that the proposed memorial or monument is not a building within the meaning and intent of the restrictive covenant.

Nor can we find that the proposed memorial and honor roll falls within the purview of the Abington Township zoning ordinance, which provides that the word "building" includes the word "structure" and also in "H" residential districts "there should be a

front yard, the depth of which shall be at least twenty feet", and further defining "yard" as "an open unoccupied space on the same lot with a building open and unobstructed from the ground to the sky".

The evidence submitted does not show whether defendants applied for a zoning permit or board of adjustment certificate for the erection of said monument, but it does disclose that the township solicitor rendered an opinion that said proposed monument was not a building or structure within the meaning and purview of the zoning ordinance.

Using "structure" in its broad sense, there are many structures of accessory and ornamental use to a modern home, which do not fall within the purview of a zoning ordinance. All municipal regulations must be read and construed in the light of approved community standards, habits, and customs, and of what ordinary civic-minded men consider reasonably necessary to promote the public health, safety, morals, and the general welfare of the community.

No one would claim that zoning regulations would apply to fences, walks, gates, gateposts, mail boxes, bird boxes, flagpoles, clothes poles, rustic benches, sundials, bird baths, playground equipment for children, flower boxes, yard fountains, radio or electric poles and wires, ornamental house numbers, signs, or the like.

Zoning regulations must bear some reasonable and substantial relation to public health, safety, morals, and general welfare, and there is no evidence whatever that this war memorial and honor roll would adversely affect either the health, safety, morals, or general welfare of this community. Moreover, the chancellor entertains grave doubt as to whether equity has jurisdiction to enforce the provisions of a zoning ordinance at the instance of one property owner, because it is a matter for the local authorities.

The remaining contentions made by defendants are not convincing and are without merit. Defendants have

failed to prove by the evidence such changes in the character of the neighborhood or such numerous violations of the "set-back" restrictions that the deed restrictions could be found to have been abandoned or of no substantial value. The testimony and exhibits clearly establish that the neighborhood is predominantly residential in character and that the deed restrictions have been violated in only a relatively few instances. A building restriction will be enforced as long as it is of substantial value to the dominant tenement: Ladner et al. v. Siegel et al., 294 Pa. 360 (1928). But unfortunately for plaintiff a monument is not a building.

Defendants have also argued that plaintiffs are estopped from pursuing this remedy by reason of the fact that they contributed cash toward the cost of the erection of the memorial and honor roll. There is no proof that plaintiffs at the time they made their contribution knew or had reason to know of the intended location of the memorial toward which so many of the residents of the community contributed from patriotic or other public spirited motives.

Under the evidence plaintiffs are not guilty of laches. Their protests were not only timely but made to the parties responsible for the contemplated construction.

According to the evidence and exhibits plaintiffs' view from the window and enclosed porch will be partially obstructed and restricted and to that extent they will be inconvenienced. However, it seems equally clear that if defendant fire company were to plant a few evergreens or other ornamental trees or shrubbery at that same location plaintiffs' view would be equally obstructed, and such landscaping could surely not be construed as coming within the purview of either the deed restriction or the zoning ordinance.

In conclusion, in all fairness it should be stated that in deciding this case the chancellor in no way questions the motives of plaintiffs in bringing the bill and seek-

ing redress. Nor should their action be interpreted as showing any lack of public spirit or historic veneration. On the other hand, it should be pointed out that the decision has been in no way influenced by the fact that the memorial was inspired by patriotic fervor now so prevalent and commendable.

In the light of the preceding discussion and from the facts as found above, there are drawn the following

## Conclusions of law

1. The building restrictions, so far as they are applicable to the facts of this case, are valid and enforcible.

2. Said war memorial and honor roll as partially erected and planned does not constitute a building within the intent and meaning of the deed restrictions and is consequently not a violation thereof.

3. Said war memorial and honor roll does not come within the intent and purview of the Abington zoning ordinance.

4. The character of the neighborhood has not sufficiently changed to justify a court in finding that said deed restrictions are no longer of substantial value and hence unenforcible.

5. Plaintiffs are not guilty of laches nor subject to equitable estoppel.

6. The bill should be dismissed.

7. Plaintiffs should pay the costs.

And now, January 15, 1945, in view of the foregoing findings of fact, conclusions of law, and discussion, it is ordered and decreed that the prothonotary shall enter the following

## Decree nisi

1. The bill is dismissed at the cost of plaintiffs.

The prothonotary is further ordered and directed to give counsel in the case notice, as required by the rules of equity practice, that unless exceptions are filed

within 15 days from the giving of such notice the decree entered above nisi will become the final decree as of course.

NOTE.—Exceptions to the decree nisi not having been filed, the decree duly became final.