Jones, Appellant, *v.* Park Lane For Convalescents, Inc.

Argued November 28, 1955.  Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Lewis H. Van Dusen, Jr.,* with him *John E. Walsh, Albert M. Hoyt, Jr.* and *Drinker, Biddle & Reath,* for appellant.

*Simon Pearl,* with him *Maxwell E. Verlin,* for appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, February 6, 1956:

Plaintiff appeals from the refusal of the court below to enjoin an intended use of defendant's[1] property on the ground that it would constitute a violation of a restriction in the title deeds.

Plaintiff is the owner of premises fronting on the southwesterly side of Wissahickon Avenue in the 22nd Ward of the City of Philadelphia, a portion of which he acquired in 1914 and another portion in 1924. On the northeasterly side of Wissahickon Avenue is the property 6611 Wissahickon Avenue now owned by defendant, to which it was recently conveyed by High Oaks, Inc., formerly known as The Philadelphia Sanitorium Inc. for Christian Scientists, it having been conveyed to the latter as part of a larger tract in 1952 by Little Sisters of the Assumption School for the Training of Nurses. It is subject to a building restriction which was imposed upon the tract by one Anna M. Smith, in conveyances by her in 1910 and 1912, as follows: "That the said lot or piece of ground hereby granted shall be used only for the purpose of erecting thereon private dwellings and the appurtenances thereto and that not more than two such dwellings and the appurtenances thereto shall be erected thereon. Further that the cost of erection of each of such dwellings

---

[1] "Defendant" refers to The Park Lane for Convalescents, Inc., plaintiff not prosecuting his appeal against High Oaks, Inc.

shall be not less than $10,000 and Further that no stable or outbuilding shall be erected thereon within a distance of 150 feet of Wissahickon Avenue . . .". Plaintiff's property is subject to a similar restriction imposed upon it in the deeds by which he acquired title from the son of Anna M. Smith, to whom she had devised her residuary estate.

In 1943 all the parties interested in these restrictions, including the present plaintiff and defendant's predecessor in title, agreed in writing that they should be modified so as to permit the use of the premises affected thereby for the purposes of the organization of the Little Sisters of the Assumption School for the Training of Nurses, and to permit the erection of any additional building or buildings on the premises for such purposes, but the restriction otherwise to remain in full force and effect. Little Sisters of the Assumption School for the Training of Nurses is a charitable institution which conducts a novitiate for educating postulants and novices studying to become nursing sisters of the sick poor, and it occupied the premises in question for such purpose until 1952 when it conveyed the property to the Philadelphia Sanitorium Inc. for Christian Scientists, now High Oaks, Inc. The latter presently operates a private sanitarium upon premises 609 West Hortter Street, to the rear of a portion of its Wissahickon Avenue premises. The Park Lane for Convalescents, Inc. plans to use its property as a convalescent and nursing home, and for that purpose to make the necessary interior alterations but no external changes or additions. It is that proposed use which plaintiff sought to have enjoined in the court below.

In order properly to consider and determine the question involved it is important at the outset to have in mind the applicable legal principles that have been enunciated, frequently reiterated, and consistently ap-

plied, through a long succession of cases decided by this court.[2] However variously phrased, they are, in substance, that restrictions on the use of land are not favored by the law because they are an interference with an owner's free and full enjoyment of his property; that nothing will be deemed a violation of a restriction that is not in plain disregard of its express words; that there are no implied rights arising from a restriction which the courts will recognize; that a restriction is not to be extended or enlarged by implication; that every restriction will be construed most strictly against the grantor and every doubt and ambiguity in its language resolved in favor of the owner. Restrictions limiting the right of the owner to deal with his land as he may desire fall naturally into two distinct classes, the one consisting of restrictions on the type and number of buildings to be erected thereon, and the other on the subsequent use of such buildings. The restrictions in the former class are concerned with the physical aspect or external appearance of the buildings, those in the latter class with the purposes for which the buildings are used, the nature of their occupancy, and the operations conducted therein

---

[2] Examples:—*St. Andrew's Lutheran Church's Appeal*, 67 Pa. 512, 520; *Crofton v. St. Clement's Church*, 208 Pa. 209, 212, 213, 57 A. 570, 572; *McCloskey v. Kirk*, 243 Pa. 319, 326, 90 A. 73, 76; *Johnson v. Jones*, 244 Pa. 386, 389, 90 A. 649, 650; *Rohrer v. Trafford Real Estate Company*, 259 Pa. 297, 299, 102 A. 1050, 1051; *Dewar v. Carson*, 259 Pa. 599, 603, 103 A. 343; *DeSanno v. Earle*, 273 Pa. 265, 270, 117 A. 200, 202; *Taylor v. Lambert*, 279 Pa. 514, 516, 124 A. 169, 170; *Satterthwait v. Gibbs*, 288 Pa. 428, 431, 135 A. 862, 863; *Brown v. Levin*, 295 Pa. 530, 534, 535, 145 A. 593, 594; *Peirce v. Kelner*, 304 Pa. 509, 515, 516, 156 A. 61, 63; *Henry v. Eves*, 306 Pa. 250, 258, 259, 159 A. 857, 859; *Kessler v. Lower Merion Township School District*, 346 Pa. 305, 308, 309, 30 A. 2d 117, 118; *Baederwood, Inc. v. Moyer*, 370 Pa. 35, 41, 87 A. 2d 246, 249; *Hoffman v. Balka*, 175 Pa. Superior Ct. 344, 347, 104 A. 2d 188, 190.

as affecting the health, welfare and comfort of the neighbors. A building restriction and a use restriction are wholly independent of one another, and, in view of the legal principles above stated, the one is not to be extended so as to include the other unless the intention so to do is expressly and plainly stated; to doubt is to deny enforcement. As examples of cases where the *manifest intention* was to restrict *both* the erection of buildings and their use may be cited *Johnson v. Jones,* 244 Pa. 386, 90 A. 649, where the restriction was that " '. . . nothing but a church or dwelling house . . . shall ever be *erected* upon any part of the said land; that none of the structures so erected shall ever be *used* as a business place, manufactory or drinking saloon, or *used* for any other purpose than a dwelling house, or its necessary outbuildings or a church.' " So, also, in *Drucker v. Russell,* 279 Pa. 443, 124 A. 92, where the restriction was that ". . . each of said building lots shall be *improved* with a dwelling house at least three stories high, . . . and that no portion of the said lots of ground or of the buildings to be erected thereon shall be *used* for the manufacture or sale of intoxicating liquors, or for any other industrial or commercial purpose." Likewise in *Taylor v. Lambert,* 279 Pa. 514, 124 A. 169, where the restriction was that " '. . . there shall not be *erected* upon the above described . . . lot of ground or any part thereof a building or buildings designed for any other purpose than a private dwelling house, and that no such building erected thereon shall be *occupied or used* for any purpose other than a private dwelling house.' " Again, in *Fox v. Sumerson,* 338 Pa. 545, 13 A. 2d 1, where the restriction was that " '. . . the buildings to be *erected* upon the land herein described shall be nothing other than private dwelling houses; . . . that no building or buildings to be erected shall be at any time hereafter forever altered into or

*used* for any other purpose than as above designated.' "
Numerous similar illustrations might be given of re-
strictions expressly covering both the type of buildings
to be *erected* upon the land and limitations upon their
subsequent *use.*

In the present case the restriction falls clearly with-
in the class of those which are limited by their terms
to the type of buildings to be erected on the land and
not to their subsequent use. The restriction is that the
lot or piece of ground shall be used only for the pur-
pose of *erecting thereon* private dwellings, and the fact
that the purpose of the restriction is to safeguard the
appearance of the neighborhood by providing for the
desired architectural type, symmetry, and spacing of
the structures, is shown by the further provision that
not more than two dwellings should be erected there-
on, that the cost of each dwelling should be not less
than $10,000 and that no stable or outbuilding should
be erected close to the front of the property on Wissa-
hickon Avenue. The restriction contains no statement
or provision whatever as to the subsequent occupancy
of the structures or the uses to which they might be
devoted. The term "dwellings" or "private dwellings"
is obviously employed in contradistinction to such
types of buildings as stores, factories, hotels, assembly
halls, and other structures.

In *St. Andrew's Lutheran Church's Appeal,* 67 Pa.
512, the restriction was that no building should be built
other than as and for a private dwelling-house; after
the lots were thus improved the restriction was to be
of no further effect, meaning merely, as the court said,
that it was not intended as a perpetual inhibition but
was confined to the *first* improvement. It was there
stated by Mr. Justice SHARSWOOD (pp. 518, 519) that
"The covenant is directed against the *building* alone,
not the subsequent *use,* and when a building is law-

fully erected on either of the lots, so far as that building is concerned, the covenant is at an end."

In *Hoffman v. Parker*, 239 Pa. 398, 86 A. 864, the restriction was that no buildings should be erected on the land other than dwellings, churches, apartment houses, and schools. An occupant of one of the dwellings, without changing the exterior of the house, set up a store in the basement for the sale of foodstuffs. The court said that this did not violate the restriction in regard to the *erection* of the buildings and that if it had been the intention to prohibit such *use* it would have been a simple matter to frame the language which would so provide, and the court added (pp. 399, 400, A. p. 865) : "Such restrictions as those under consideration are lawful, but they are not extended beyond their plain and necessary intent. As they operate to limit the uses to which an owner might lawfully devote his property, they must be strictly construed. There is no equitable extension of their terms, and the court cannot read into them an intention which does not plainly appear from the words of the restrictions." The building having been *erected* as a dwelling house, and not having been altered in any external way, the court held that the *use* to which it was put was not a violation of the restriction, and that "the matter of the external construction is the one with which the agreement deals."

In *Mamnett v. Born*, 247 Pa. 418, 93 A. 505, the restriction was that no more than one dwelling house should be erected or maintained on each 40 feet of land. It was held that it was not violated by the erection of duplex houses each of which would be occupied by two families. The court said (p. 420, A. p. 505) : "As was said of a similar restriction in St. Andrew's Church's App., 67 Pa. 512, the covenant is directed against the *building* alone, not its subsequent *use*, and when a

building is lawfully erected on either of the lots, so far as the building is concerned the covenant is at an end." This decision was followed in *Rohrer v. Trafford Real Estate Company*, 259 Pa. 297, 102 A. 1050, and *Peirce v. Kelner*, 304 Pa. 509, 156 A. 61.

The above and other pertinent authorities are collated in *Kauffman v. Dishler*, 380 Pa. 63, 110 A. 2d 389. In that case a restriction that not more than one house, same to be detached or semi-detached, and private garage, should be erected on each lot, was held not to prohibit the building of three-unit apartment houses even though these would be *occupied* by more than one family. The conclusion there reached from an examination of the cases was (pp. 68, 69, A. p. 391) that ". . . all the authorities are uniform to the effect that a restriction against the erection of a building other than a 'house' or a 'dwelling house' is a restriction only in regard to the *type of construction* and not the subsequent *use*, and that if any restriction on *use* is intended it should be plainly expressed and not left to implication."

Appellant relies upon the decision in the case of *Gerstell v. Knight*, 345 Pa. 83, 26 A. 2d 329, where a covenant in a deed provided that one "residence" only, should be built on the land and it was held that only one family should reside on the land and that the house which had been built thereon could not be altered into residences for two families. The decision turned wholly on the words "one residence only" which the court, whether correctly or otherwise, chose to distinguish from "one dwelling house" or "one building" as embodying the connotation of the use of the land for occupation by only one family.

The authorities give full support to the court's denial of an injunction to enforce this present restriction.

The final order and decree of the court dismissing the complaint is affirmed at the cost of appellant.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

The question involved is narrow: What is the proper construction of this building restriction in the light of the "record facts"? The restriction is: "Under and subject to the following Building Restrictions that the *said Property shall be used only for the Purpose of erecting thereon Private dwellings\** and the appurtenances thereto and that not more than two such dwellings and the appurtenances thereto shall be erected thereon, . . . ."

The Complaint in Equity averred: "12. The plaintiff avers that *the neighborhood* in which the premises of plaintiff and defendants are located *is a residential one* and that the proposed use of the premises owned by defendants . . . would be incompatible with residential use; that such proposed use would require the frequent use of the proposed new driveway running from Wissahickon Avenue by patients, physicians, employees and visitors of the nursing homes which the defendants propose to operate; that such proposed use would cause the plaintiff to be subjected to objectionable noises, particularly in the summer months; and that such proposed use would deprive plaintiff of the enjoyment of plaintiff's property as a private dwelling . . . ."

Defendant not only did not deny that this was a residential neighborhood, but by filing preliminary objections admitted as true all the facts which were properly pleaded: *Narehood v. Pearson,* 374 Pa. 299, 96 A. 2d 895; *Gardner v. Allegheny County,* 382 Pa. 88, 114 A. 2d 491.

---

\* Italics throughout, ours.

In my opinion the parties clearly intended "that the *said property shall be used only* for . . . private dwellings and appurtenances." The majority opinion limits the restriction to *original erection* and permits a private dwelling house, one day after erection, to be thereafter *radically altered and "used"* for an entirely different purpose. That is contrary to the language, meaning and intent of the restriction. Although the majority opinion is careful not to say so, it logically and necessarily holds that the owner of the servient tenement can one month or *one day after the erection* of a private dwelling completely remodel the interior or exterior of the private dwelling or both, and since the restriction has no application to *use*—which ignores its *use* provision and clear intent—change it into and *use* it for a store or a commercial building or a sanitarium or a building for any and every other conceivable *use*. I believe this is so unreasonable as to be absurd.

Whenever two interpretations of a written instrument are reasonably possible, and one construction produces a reasonable result which is in accord with the likely or clearly possible object, purpose and intent of the parties, and the other construction produces a result which is unreasonable or absurd, the latter construction should never be adopted.

Furthermore, this restriction is controlled by *Gerstell v. Knight,* 345 Pa. 83, 26 A. 2d 329. In *Gerstell v. Knight,* 345 Pa., supra, the owner, in 1924, conveyed property by deed containing the following covenant: ". . . one residence only shall be *built* on the above described tract of land and said residence shall not be nearer to Shawnee Avenue than twenty (20) feet." The defendants subsequently acquired the land and constructed a magnificent residence which complied with the restriction. In 1940 they proposed to

*alter* this residence into a duplex residence for two families in accordance with original plans. The Court enjoined the defendants from altering the house into two residences. The present Chief Justice did not in that case place his dissent on his present ground, namely, that the word "built" *meant "original erection and not use"* but on the very different ground, viz., the covenant was "a restriction on the number of houses to be built on the tract, and *not* on the *occupancy* of the house when built *other than that it be for residential purposes.*" Even this limited construction and position were rejected by a majority of the Court. In the instant case the Chief Justice reaches an opposite conclusion, viz., the restriction is not limited to residential purposes, but *permits the house to be* (altered and) *used for non-residential purposes.* The meaning of the present restriction is, I repeat, manifest and its interpretation is specifically governed by the *Gerstell* case.

The cases cited or quoted in the majority opinion lay down well established general principles of law that a building restriction should be strictly construed. However, this rule of construction cannot be used to defeat the intentions of the parties or to (unintentionally) negate or distort the language of a restriction or give it a different meaning or a meaning which will produce an unreasonable or absurd result. Furthermore those cases and the general principles enunciated therein do not control this case because this restriction differs from the restriction in those cases and each case depends on the language of the restriction in controversy* and the facts in the particular case.

---

* In each of said cases the restriction was reasonably susceptible of the interpretation placed upon it by the Court, and the language of the Court's opinion therein must of course be read in connection with the particular restriction in that case.

The majority opinion relies, in the last analysis, on four cases, each of which is unquestionably distinguishable from the instant case. The first case, and the one upon which both the majority opinion and the appellee place most reliance is (the so-called leading case of) *St. Andrew's Lutheran Church's Appeal*, 67 Pa. 512. The restriction in the deed in that case was: ". . . no building should be built upon either of the several lots of ground, to be used for purposes other than as and for a private dwelling-house, office, . . . or stable; . . . . Provided . . . that whenever either of the said lots of ground shall be improved by buildings as herein above-mentioned, . . . then and *from thenceforth the said restrictions . . . shall, . . . be* deemed and considered *of no further force and effect, . . . .*" The majority opinion accurately says that this restriction "was not intended as a perpetual inhibition, but [by its specific language] was confined to the *first* improvement. It was there stated by Mr. Justice Sharswood (pp. 518, 519) that 'The covenant is directed against the building alone, not the subsequent use, and when a building is lawfully erected on either of the lots, so far as that building is concerned, the covenant is at an end.'" The language of Justice Sharswood was undoubtedly appropriate to the covenant there involved, but equally clearly, it has no effect or application to the totally different covenant here involved.

*Hoffman v. Parker*, 239 Pa. 398, 399, 86 A. 864, was the second case heavily relied upon by the majority. It likewise is clearly distinguishable because of its facts. The restriction prohibited the erection of any building other than dwellings, apartment or flat houses, churches, schools or private garages. A dwelling house was erected and as the Court there found: ". . . there has been *no change in the building*, except that in the basement the *defendant has erected shelves* on which

she places her goods [for sale of food]". How vastly different are the facts in that case from the facts in the instant case. What the majority opinion has likewise inadvertently overlooked is that *the defendant still used the dwelling house as her dwelling house.* Obviously that case is no authority to change a private dwelling house into an enormous sanitarium, or to change it, as the majority would permit, one day after its erection, into a different building and *any different use* which defendant may desire.

*Hamnett v. Born,* 247 Pa. 418, 93 A. 505, was the next case relied upon by the majority. In that case the restriction was that " '. . . for and during a period of ten (10) years . . . no more than one dwelling house shall be erected or maintained on each 40 foot of land.' " This Court held that the restriction was not violated by the erection of a *duplex* house since it would still be "one dwelling house" within the meaning of the restriction, even though used as such by two families.

The fourth authority relied upon in the majority opinion was *Kauffman v. Dishler,* 380 Pa. 63, 110 A. 2d 389. In that case the restriction was " 'That not more than one (1) house, same to be detached or semi-detached, and private garage shall be erected on each lot . . . .'" This restriction was held not to prohibit the *erection* of a three-unit apartment house, since in the Court's opinion that came within the definition of a house as used in that restriction. The question involved and the Court's decision were thus tersely and accurately stated by Chief Justice STERN, who wrote the opinion: "The question concerns the scope of the term 'house'* as used in a building restriction in a

---

* A *private* dwelling house has "a much more restricted meaning than 'dwelling house' or 'house' or 'one single dwelling' and does not include a private sanitarium": *Taylor v. Lambert,* 279 Pa. 514, 124 A. 169.

deed . . . . It is our conclusion, therefore, that there is nothing in the present restriction that 'not more than one house shall be erected on each lot' which would justify an interpretation that would make it read: 'that no more than one *single-family* house shall be erected on each lot.' "

It cannot be contended by any stretch of language that the words "private dwellings" used in the present restriction can be construed to mean or include a store or a commercial building or a sanitarium;* the only way the majority opinion attempts to justify its construction is to hold that the restriction in the instant case applies only to the *original erection* and does not affect or prohibit the material alteration of the dwelling for an entirely different use.**

Although broad general language can be found in some opinions with respect to *subsequent use,* such language must be read in connection with and limited to the restriction and the facts in that particular case. See for example, *St. Andrew's Lutheran Church's Appeal,* 67 Pa., supra. An analysis of each case demonstrates that there is not a single authority which limits a restriction such as the present one to *original erection* and authorizes a subsequent conflicting or diametrically different use.

---

* A *private* dwelling house has "a much more restricted meaning than 'dwelling house' or 'house' or 'one single dwelling' and does not include a private sanitarium": *Taylor v. Lambert,* 279 Pa. 514, 124 A. 169.

** The majority admit that the agreement with the Little Sisters of the Assumption does not affect this case. See *Landell v. Hamilton,* 175 Pa. 327, 34 A. 663; *Katzman v. Anderson,* 359 Pa. 280, 284, 285, 59 A. 2d 85, 87; *Price v. Anderson,* 358 Pa. 209, 219, 56 A. 2d 215, 220; *Todd v. Sablosky,* 339 Pa. 504, 508, 15 A. 2d 677, 679; *Benner v. Tacony Athletic Association,* 328 Pa. 577, 581, 196 A. 390, 392, 393; *Hunter v. Wood,* 277 Pa. 150, 152, 120 A. 781, 782; *Phillips v. Donaldson,* 269 Pa. 244, 250, 251, 112 A. 236, 239.

We likewise note that the majority opinion says: ". . . A building restriction and a use restriction are wholly independent of one another, . . . ." This independence, as we have seen, is not substantiated by the cases. In my opinion, both logic and the law demand that the converse be true, i.e., that building and use restrictions are dependent, one on the other, unless the converse can be clearly shown.

I would reverse the order and decree of the lower court.

Mr. Justice ALLEN M. STEARNE joins in this dissenting opinion.