# Johnson, Appellant, v. Jones.

*Real property—Covenants—Building restrictions — "Dwelling house"—Apartment house—Equity—Injunction.*

1. In the construction of building restrictions, all doubts are to be resolved against the restriction, and in favor of the free and unrestricted use of the property.

2. The word "dwelling house," in the sense in which it is ordinarily used and understood, means a house occupied as a residence, in distinction from a store, office, or other building.

3. Two owners of unimproved lots of ground in the same neighborhood, mutually covenanted that neither would thereafter sell or convey any part of the premises severally owned by them, without a restriction "that nothing but a church or dwelling house, together with the outbuildings necessary for the convenience and comfort of the occupants thereof, shall ever be erected upon any part of said land; that none of the structures so erected shall ever be used......for any other purpose than a dwelling house or its necessary outbuildings......" The purpose of the restriction was

expressed to be to permit the erection of only such buildings "as shall harmonize and tend to beautify the general neighborhood and advance values." A purchaser from one of the covenantors prepared to erect a series of buildings, to be four stories in height, each story to consist of two separate apartments or flats, for use as housekeeping apartments; each flat was to contain a reception hall, a living room, two bed rooms, a dining room, a servant's room, and a bathroom, kitchen and pantry, and was to be adapted only for dwelling purposes. There was to be no general restaurant attached. A grantee of the other covenantor sought by bill in equity to enjoin the construction of the buildings. The answer described the proposed buildings, and denied that the structures would be out of harmony with the surroundings or that their construction would prevent an advance of values. *Held,* the court did not err in dismissing the bill.

Argued Jan. 13, 1914. Appeal, No. 226, Jan. T., 1913, by plaintiff, from decree of C. P. No. 3, Philadelphia Co., March T., 1913, No. 1931, dismissing bill in equity for an injunction in case of W. Percival Johnson v. Lewis Jones and Daniel Crawford, Jr. Before MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity to enforce a building restriction. Before DAVIS, J.

The opinion of the Supreme Court states the facts.

The court on hearing on bill and answer dismissed the bill. Plaintiff appealed.

*Error assigned* was the decree of the court.

*Edwin O. Lewis,* for appellant.

*John G. Johnson,* with him *James Wilson Bayard,* for appellee.

OPINION BY MR. JUSTICE STEWART, March 9, 1914:

William F. Harrity and Lewis Jones, the latter one of these appellees, were respectively owners of several large unimproved lots of ground fronting on Oxford,

Nassau and Sixty-ninth streets in the City of Philadelphia. With a view to having their said lands improved and developed in a way that whatever buildings or structures might be erected thereon should harmonize and tend to beautify the general neighborhood and advance values, they mutually covenanted that neither would at any time thereafter sell or convey any part of the premises severally owned by them without subjecting by deed the part sold to the following restrictions: "That nothing but a church or dwelling house, together with the out-buildings necessary for the convenience and comfort of the occupants thereof, shall ever be erected upon any part of the said land; that none of the structures so erected shall ever be used as a business place, manufactory or drinking saloon, or used for any other purpose than a dwelling house, or its necessary out-buildings or a church," &c. The restriction embraced other matters as well, but as to these no breach or intent to commit a breach is averred, and their recital is unnecessary. Lewis Jones, one of the owners, has since by articles of agreement sold to Daniel Crawford, the other appellee, a part of the premises owned by him and subject to the different restrictions. W. Percival Johnson, the appellant, is now the owner of a part of one of the large lots which had imposed on it the above restrictions. In his bill he avers that Daniel Crawford, Jr., proposes, upon taking title from Jones, to erect upon the lots so acquired by him, a series of buildings, each containing a number of separate apartments or flats, suitable for use separately for housekeeping purposes, and intended to be so used and occupied, and, complaining that the construction of such described buildings would be a violation of the restriction and greatly depreciate the value of his own property, the bill prayed for an injunction restraining Jones from conveying the premises otherwise than subject to the above restriction, and restraining Crawford from erecting upon the premises any building designed to be leased or rented as separate

apartments for housekeeping purposes. The answer of the defendants simply described somewhat more in detail, the structures which Crawford proposed to erect, and denied that their erection would transgress the restriction. Neither defendant denies that the lot is subject to the restriction; both defend on the ground that what is proposed would be no violation. The case was heard on bill and answer, the injunction was refused, and plaintiff's bill dismissed. This appeal followed.

The answer thus describes the buildings proposed to be erected and the usage to which they are to be devoted; each of the series of buildings is to be four stories in height, each story to contain two separate apartments or flats, each flat or apartment being designed and improved suitable only for use separately as a housekeeping apartment, to be only so leased and occupied; each apartment to contain a reception hall, a large living room and two bed rooms, a dining room, a servant's room in addition to the bath-room, pantry and kitchen; nowhere in either of the buildings is there to be any central room for use as a restaurant or for any such purpose, nor are the buildings in any way adaptable for use other than a series of apartments, fitted only for dwelling purposes. The question raised is a very narrow one; does such a structure, devoted to the use here described, fall within the prohibition imposed? An affirmative answer to the question can be returned only in case it is made to appear that the improvement proposed is in plain disregard of the express words of the restriction; all doubts are to be resolved against the restriction and in favor of the free and unrestricted use of the property. Such is the rule laid down in St. Andrew's Lutheran Church's Appeal, 67 Pa. 512. The governing word here is "dwelling-house." We find nothing to indicate that the word is used in any qualified or restricted sense. As defined by Webster, and this we take to be the sense in which it is ordinarily used and understood, a dwelling-house is a house occupied as a

residence, in distinction from a store, office or other building. Neither the character of the structure here proposed, nor the use to which it is to be put, suggests anything that would bring it within any of these distinctions. In its design it is not adapted to business use of any kind, but exclusively for the accommodation of persons or families in the way of permanent residence, in separate apartments, each of these apartments being furnished and supplied with the same conveniences and accommodations, including privacy, that are found in the ordinary single rented dwelling, the chief difference being that in this kind of structure one roof is intended to shelter many families, whereas in the single dwelling it shelters but one or, at most, two. There may be difference of opinion as to which has the advantage over the other in this particular, but that does not change the fact that the design in each is the same, to afford accommodations for family life in permanent residence. The large apartment house as now constructed comprises a series of dwellings quite as much as does the long row of adjoining houses which the defendant would have perfect freedom to construct. Not only does the proposed structure fall within the meaning of the term dwelling-house, as it is here employed, but in addition it may be said, that having regard to the purpose and object of the covenant, as expressed in the agreement, it in no way contravenes, at least so far as here appears. The purpose of the restriction was to permit the erection of only such buildings "as shall harmonize and tend to beautify the general neighborhood and advance values." It is denied in the answer that the proposed structures would be out of harmony with the surroundings or that their construction will prevent an advance of values. We fail to see how in either particular they could thwart the purpose of the original covenant. Whether they would tend to beautify the general neighborhood depends on individual taste, and that is not a question for discussion.

The appeal is dismissed, and the decree is affirmed.