## Douglass, Appellant, v. Queeney, Jr. et ux.

Argued March 15, 1933.

Before Trexler, P. J.,

KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Frank S. Hughes,* and with him *Chester H. Ashton,* for appellant.

*G. Mason Owlett,* of *Crichton & Owlett,* for appellees.

OPINION BY JAMES, J., July 14, 1933:

On March 22, 1923, Ruth P. Douglass, plaintiff herein, obtained title to a tract of 187 acres of land in Liberty Township, Tioga County, Pa., on which premises was a dwelling house where she conducted what is commonly known as a tourists' home, for keeping overnight guests and serving meals, and which she had conducted prior to conveyance of the premises in question. On November 5, 1927, Ruth P. Douglass, with the joinder of her husband, sold and conveyed a portion of said land to Christy H. Frazier and John A. Frazier, along with which was conveyed to the said grantees the right to use in common with Ruth P. Douglass, her heirs and assigns, the water in the spring in the woods at the rear of the house now occupied by grantors, together with the right and privilege to lay a pipe, not exceeding one inch in diameter, from said spring as nearly as possible in a direct line to the land therein described and con-

veyed, which deed also contained the following cove-
nant, condition and restriction: "This conveyance
is made under and subject to the condition that
the land above described and hereby conveyed shall
be used by the said grantees, their and each of
their heirs and assigns, for a picnic ground, a refresh-
ment stand, at which refreshment stand only light
lunches, but no meals shall be served, a station for the
sale of oil, gas and automobile accessories, and the
erection of not more than two dwelling houses, to be
used as dwellings only, and for no other purpose or
purposes." Following said covenant, we find a cove-
nant on the part of Ruth P. Douglass which reads as
follows: "And the said grantors, for themselves, their
and each of their heirs and assigns, covenant and agree
that no part of the balance of said land conveyed to
the said Ruth P. Douglass by deed from the said
Charles Grover and wife, as aforesaid, shall be used
for a refreshment stand, or a station for the sale of
oil, gas or automobile accessories, as long as the land
above conveyed is used for that purpose by the said
grantees, their heirs or assigns; provided, however,
that nothing herein contained shall prevent or inter-
fere with the sale of refreshments in the house now on
the said land, or any addition thereto, or in any hotel
or sanitarium which may hereafter be erected there-
on." On May 16, 1929, the said John A. Frazier and
wife and Christy H. Frazier and wife, by deed sold
and conveyed the same lands to Joseph F. Queeney,
Jr., and Emma M. Queeney, his wife, defendants
herein, which deed contained the same covenants, con-
ditions and restrictions. The defendants herein came
into possession of the land on or about May 16, 1929,
erected a station for the sale of oil, gas and auto-
mobile accessories and a small refreshment stand in
which only light lunches are served and in which the
defendants live. On or about May 1, 1930, the said

defendants built and erected four sleeping cottages on said land which were rented as cottages to tourists and were furnished with a bed, a looking glass, towel and water, and chair, and said buildings were occupied by tourists just for the night. On July 25, 1930, plaintiff filed her bill in equity praying for the removal of the sleeping cottages and a septic tank (the septic tank is not involved in this appeal) from the said premises, to which an answer was filed, hearings had, and findings of fact and conclusions of law made, and a decree nisi entered. Among the findings of fact, the court found that in the deed of Ruth P. Douglass to the Fraziers and in the Fraziers' deed to defendants, the above covenants, conditions and restrictions were made and that the defendants had erected on the premises four sleeping cottages for rent to persons desiring sleeping accommodations. The decree nisi reads as follows: "And now, August 26, 1931, it is ordered and decreed that defendants abandon permanently the use of the sleeping cottages on the premises, described in the bill in equity, as temporary quarters for guests, and either combine and convert them into the dwelling houses authorized by the conveyance to them, or remove them from the premises, and they are enjoined from building in the future any sleeping cottages on the premises," to which decree exceptions were filed. The exceptions were sustained by the court on the ground that the erection of four sleeping cottages was not a violation of the covenant, condition and restriction contained in the deed and the bill dismissed, from which decree this appeal is taken.

The purposes for which the land described could be used by defendants may be divided into four parts:

1. A picnic ground; 2. a refreshment stand at which refreshment stand only light lunches but no meals shall be served; 3. a station for the sale of oil, gas and automobile accessories; 4. and the erection of not more

than two dwelling houses, to be used as dwellings only; and for no other purpose or purposes.

The covenant on the part of the grantor, plaintiff herein, is divided into two parts: That no part of the balance of said land shall be used for, 1. A refreshment stand in any other place than in the house now on said land or any addition thereto or in any hotel or sanitarium which may hereafter be erected thereon; 2. a station for the sale of oil, gas or automobile accessories as long as the land above conveyed is used for that purpose by the grantees, their heirs or assigns.

The covenants above recited clearly indicate that they were mutual covenants and that it was the intent and purpose of the grantor and grantees that each was to have a restricted use of their respective premises and that the character of business for which their respective premises were to be used was not to conflict with each other. Grantor and grantees were to have the use in common of the spring upon the land of the grantor; the grantees were permitted to use their ground for a picnic ground, a refreshment stand, and for the sale of light lunches but not for serving meals, a station for the sale of oil, gas and automobile accessories, while the grantor covenanted not to use her land for a refreshment stand or to conduct a station for the sale of oil, gas and automobile accessories. These mutual restrictions clearly indicate an intention that the uses of their respective premises should not interfere with each other. In appellee's argument it is stated as follows: "It is clear under the foregoing covenant that when the plaintiff decided to sell the land now owned by defendants, she wished to restrain the owners of that land from conducting a tourists' home such as she conducted which would compete with her business, and consequently she provided that on the land there should be erected not more than two

dwelling houses. It would seem obvious that she had in mind that any dwelling house erected on said premises should not be used also as a tourists' home, and that is all she provided against. It was for that reason that she stated that two dwelling houses should be used as dwellings only and for no other purpose or purposes. It is urged that the words 'for no other purpose or purposes' can not be taken to apply to the use to which the dwelling houses were to be put, for it is clear that she wished to prevent the use of any dwelling houses erected on the land as a tourists' home.'' The language of the covenant clearly shows that the only structures to be placed on the premises were a refreshment stand, a gasoline station, and not more than two dwelling houses to be used for dwelling houses only, and the language ''for no other purpose or purposes'' shows clearly the intention that the use of dwelling houses was to be restricted to the ordinary and usual acceptation of the term ''dwelling houses.'' The word ''dwelling'' has a definite legal meaning as being a place where there is some permanence of residence. ''Anderson's Law Dictionary defines 'dwelling' in these words: 'A person has his dwelling where he resides permanently or from which he has no present intention to remove,' '' which definition was approved in Yerkes v. Stetson, 211 Pa. 556, 558, 61 A. 113. ''As defined by Webster, and this we take to be the sense in which it is ordinarily used and understood, a dwelling house is a house occupied as a residence, in distinction from a store, office or other building.'' Johnson v. Jones, 244 Pa. 386, 389, 90 A. 649. In 19 C. J. 845, we find the following: ''In its broadest significance the word (dwelling) denotes a building used as a settled human abode; and, in common parlance, when not qualified, conveys the notion of a home.'' The use by defendants of sleeping cottages would clearly not be a use for a dwelling house and

would be in direct competition and conflict with the use of the tourists' home by plaintiff. If we carry the contention of the defendants to its logical conclusion, there is no language in the covenant to prevent the defendants from erecting a hotel to be used as a tourists' home, which is admitted to be a violation of the covenant. Defendants admit that the covenant prohibits the use of the land for a tourists' home, yet we find no express language prohibiting such use. We can find no distinction between an individual tourists' home, classified as a sleeping cottage, and a larger or more commodious building consisting of many sleeping rooms. Under defendants' construction of the covenant, they would not be limited alone to the erection of four sleeping cottages but as many more as the demand may require. A reasonable construction of the covenant leads us to the conclusion that the use of the land for sleeping cottages, to be rented out, was prohibited by the covenant.

Restrictions are to be construed most strongly against the grantor. They should, also be conformable if possible, to the letter and the obvious intent of the grant. All rules of construction are simply means to a given end, by those methods of reason which experience has taught are best calculated to lead to the intention, and generally no rule will be adopted to defeat the intention. Whatever may have been the earlier doctrine, it is now thoroughly settled that technical rules of construction are not favored, and should not be applied so as to defeat the fair intention of the parties: Dewar v. Carson, 67 Pa. Superior Ct. 527, 532.

The general rule is that the language of a deed should be interpreted in the light of the apparent conditions existing when made: Murphy v. Ahlberg, 252 Pa. 267, 97 A. 406. Equity will restrain the violation of the restriction so long as it remains of substantial

value to the owner of the dominant estate: Landell v. Hamilton, 175 Pa. 327, 34 A. 663; Hunter v. Wood, 277 Pa. 150, 120 A. 781. It is apparent from the reading of this covenant that the use of these premises by defendants for any purpose other than the purposes expressly designated is a violation of the covenant and equity will grant relief.

The court below felt that the cases of Johnson v. Jones, 244 Pa. 386, 90 A. 649; Rohrer v. Trafford Real Est. Co., 259 Pa. 297, 102A, 1050, and Satterthwait v. Gibbs, 288 Pa. 428, 135 A. 862, were controlling and upon the strength of those decisions dismissed the bill. We can not agree that these cases are controlling.

In Johnson v. Jones, supra, it was held that where there was a restriction that nothing but a church or dwelling house, together with the outbuildings necessary for the convenience and comfort of the occupants thereof, shall ever be erected upon any part of said land; that none of the structures so erected shall be used for any other purpose than a dwelling house or its necessary outbuildings; that the word "dwelling-house" was to be used in the sense in which it is ordinarily used and understood, which means a house occupied as a residence, did not prevent the erection of a series of buildings to be four stories in height for use as housekeeping apartments, and further held that the proposed structure fell within the meaning of the term "dwelling-house" as therein employed. In Rohrer v. Trafford Real Est. Co., supra, it was held that the building of a duplex building or apartment house is not a violation of a restriction limiting the owner to one dwelling house upon the lot, the test being whether the building is a single structure intended for dwelling purposes and not whether it was intended to house more than one family. In Satterthwait v. Gibbs, supra, the court held that an apartment house is not repugnant to the restriction of a "dwelling-house"

and that the word "dwelling" is not a building restriction and does not mean a single dwelling for one family, but is a more comprehensive term.

Defendants also allege that plaintiff is precluded by laches in that she delayed for several months after the completion of said cabins before filing the bill. With this we do not agree as the testimony shows that prior to the erection of the buildings, Joseph F. Queeney, Jr., one of the defendants, had a conversation with Frank Hughes, Esq., Attorney for the plaintiff, in which he was notified that he should not build the cottages. In spite of this notice, defendants proceeded to erect the sleeping cottages and therefore did so at their peril.

We therefore hold that the language "for the erection of not more than two dwelling houses to be used as dwellings only, and for no other purpose or purposes" is sufficiently clear, explicit and definite to restrict the use of sleeping cottages on the land in question and the court below erred in sustaining the exceptions to the decree nisi.

The decree is reversed with instructions to enter a decree in conformity with this opinion. Costs to be paid by appellees.