462 A.2d 827

**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellant,**

**v.**

**INSURANCE COMPANY OF NORTH AMERICA.**

Superior Court of Pennsylvania.

Argued Nov. 4, 1982.

Filed July 8, 1983.

128

Robert A. Naragon, Doylestown, for appellant.

Frederick E. Smith, Philadelphia, for appellee.

Before SPAETH, ROWLEY and VAN der VOORT, JJ.

ROWLEY, Judge:

This is an appeal from a declaratory judgment entered in favor of Appellee Insurance Company of North America (hereafter "INA"), holding that Appellant Nationwide Mutual Insurance Company (hereafter "Nationwide") is the primary insurance carrier responsible for the payment of benefits under the circumstances of this case. We reverse and remand with directions to enter declaratory judgment in favor of Nationwide.

On October 27, 1977, Nancy Bauder, an insured of INA, delivered her 1974 Volkswagon Dasher to Sutton Auto Service of Newtown, Pennsylvania, for the purpose of having it repaired. John J. Sutton, the owner of Sutton Auto Service, permitted Mrs. Bauder to borrow a 1962 Ford Falcon station wagon for the day, anticipating that the repairs on her car would be completed by the following day. The Falcon was insured under a policy of insurance written by Nationwide and issued to "Sutton Auto Service." Later that day, while Mrs. Bauder was driving the Falcon, she was involved in an accident with a motorcycle near a shopping center in Doylestown, Pennsylvania. Both the driver and the passenger of the motorcycle were injured.

As a result of the accident, the driver and passenger of the motorcycle filed suit against Mrs. Bauder and Sutton Auto Service. The defendants thereupon called upon their respective insurers, the parties herein, to defend the trespass suit. The two insurers have at all times recognized that one or the other of them is primarily liable under their policies of insurance, but they disagree as to which insurer that is. Because no agreement could be reached, Nationwide filed a petition for declaratory judgment on November 13, 1979, seeking a declaration of the rights and liabilities of the insurers. Nationwide argues that its policy excludes coverage under the circumstances; INA contends on the other hand that it owes only a duty to provide coverage in excess of the limits of the policy issued by Nationwide and that Nationwide is the primary insurer.[1]

The parties submitted the case to the court on the pleadings, briefs and depositions of the two insureds. The trial court entered an order on August 10, 1981, granting declaratory judgment in favor of INA. This appeal followed.

1. At oral argument, counsel informed the court that the underlying action in trespass had been settled and the driver and passenger of the motorcycle had been compensated for their injuries. The only issue remaining is which insurer will ultimately be required to bear the loss.

In its opinion, the trial court properly sets forth and analyzes the policy issued to Mrs. Bauder by INA as follows:

Section A of the policy is captioned "Bodily Injury and Property Damage Liability Coverage" and provides in relevant part as follows:

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of:

(a) bodily injury ... sustained by any person; and

(b) injury to or destruction of property ...; arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile, and the Company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the policy....

The policy define[s] "owned automobile" to include, *inter alia,* a "temporary substitute automobile." A "temporary substitute automobile" is defined as the following:

... [A]ny automobile ... not owned by the Named Insured, while temporarily used as a substitute for the owned automobile ... when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

Part B of Section A, in a clause captioned "Other Insurance," provides in relevant part as follows:

... [T]he insurance with respect to a temporary substitute automobile or a non-owned automobile shall be excess insurance over any other valid and collectible insurance.

From the facts of the case it was clear that at the time of the collision Nancy Bauder was driving a temporary substitute automobile as defined in her INA policy. She did not own the vehicle but was using it because the insured auto was out of use because of breakdown, repair or servicing. As such her policy with INA initially provides coverage. This coverage is limited, however, by the "Other Insurance" clause in the policy which limits INA's

liability to losses not covered by any other insurance. It is clear then that if Nationwide is not the primary insurer under the policy held by Sutton, then INA must assume full liability. If, however, Sutton's Nationwide Policy does cover the loss, then INA has only excess liability. Tr.Ct.Op. at 3–4.

The trial court also correctly sets forth, Tr.Ct.Op. at 4–5, the applicable provisions of the policy issued to Mr. Sutton by Nationwide:

Under this coverage if you become legally obligated to pay damages resulting from ownership, maintenance, use, loading or unloading your auto, we will pay for such damages.... Also protected is any person or organization who is legally responsible for the use of your auto and uses it with your permission....

[PROPERTY DAMAGE & BODILY INJURY LIABILITY COVERAGE: COVERAGE EXCLUSIONS—]

(3) [This auto property and bodily injury liability insurance] does not cover ownership, maintenance, or use of vehicles in an automobile business operation, such as an auto repair shop, public garage or parking place, sales agency, or service station. However, it does cover the maintenance and use of your auto by you, a member of your household, or anyone associated with or employed by you in such a business.

The court then stated that these provisions amounted to an " 'auto repair shop' exclusion" and held that such an "exclusion was not intended to apply to a situation where the vehicle, which happens to be owned by a repair shop owner, is loaned to a customer." *Id.* at 6.

We have concluded that the trial court incorrectly construed this third exclusion by limiting its application solely to a situation where an insured leaves the insured vehicle in an auto repair shop for repairs. Clause (3) quoted above expressly extends coverage to the owner of the insured car, a member of his or her household and anyone "associated with or employed by" the owner in an "automobile business operation." The exclusion operates to deny coverage, *inter*

*alia,* where a business-related automobile is used by someone not associated with the owner or with the "automobile business operation" in which the car is used. Thus, the policy is worded in such a way as to deny coverage to the borrower of a business loaner car, such as Mrs. Bauder.

We also are compelled to disagree with the trial court's factual finding that the Falcon was not "used in the business." Tr.Ct.Op. at 2, n. 2. Such a finding is contrary to the clear weight of the evidence. Mr. Sutton testified at his deposition that the car was kept primarily for business purposes: the automobile was purchased for business use with business funds; it was registered and insured in the name of the business; it was used for running errands related to the business, such as obtaining parts; and Sutton had established a practice of lending the car to customers he had come to know when their personal cars needed repairs. Mrs. Bauder had in fact been one of the customers permitted to borrow the car on at least one occasion prior to the events in this case. Sutton's testimony on these points was neither contradicted by any other evidence nor shaken on cross-examination. The fact that Sutton also used the Falcon for personal purposes does not alter the uncontradicted evidence that the automobile was also used in his business. Even if this automobile had been used in the business for only one day—the day of the accident—Nationwide's policy would not provide coverage for the injuries sustained unless the car was being used by Mr. Sutton, a member of his household, a business associate or an employee. Likewise, lending the car to a personal friend would not cause the policy's exclusion to be inapplicable as long as the loan was made in the course of doing business in an "automobile business operation." We therefore conclude that the exclusion from the Nationwide policy quoted above applies to the uncontradicted facts of this case and that, as between the two parties, INA is the insurer obligated to provide benefits under the circumstances here present.

Both INA and the trial court drew some significance from other policies issued by Nationwide to Sutton Auto Service and Sutton. The first of these is described as a "garageman's liability policy" issued to Sutton Auto Service and insuring a one ton pick-up truck and a tow truck. The other policy was issued to Sutton individually and covers two passenger vehicles owned and operated by Sutton and his wife totally apart from the business except for a few isolated instances when a business-related use was necessary. INA argues that because the Falcon was not covered by the "garageman's policy" but on a separate "individual" policy, Sutton owned the Falcon "individually" and not as a business related vehicle and that the loan to Mrs. Bauder was a personal loan or favor rather than in the course of business. However, there is nothing in this record to indicate that Mr. Sutton had ever loaned any of his cars to someone who was not a customer or that he would have loaned the Falcon to Mrs. Bauder had she not been a customer. On the contrary, the record shows that Mrs. Bauder obtained the use of the Falcon solely because she was a customer of Sutton Auto Service. The fact that Sutton approved such loans only for customers he knew does not indicate that it was done as a personal favor. Rather, it shows that he was making a thoughtful and rational business decision: only regular, known customers would be permitted to use the car because they could be trusted to take care of it and return it undamaged. Furthermore, the fact that there were separately written policies covering different cars does not aid in determining what the language of the applicable policy means. Finally, any meaningful inference which can be drawn from the fact that the Falcon was insured on a separate policy from the business' trucks is balanced equally by a contrary inference from the fact that it was also insured separately from the Sutton's family cars. We therefore reject INA's argument.

The order of the trial court is reversed and this case is remanded for the entry of judgment in favor of the appellant in this case, Nationwide Mutual Insurance Company.

Jurisdiction is not retained.