# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Leanna Chan; Otto Chan; Sigrid DaVeiga; Dobenizabe LLC; Desiree Garcia; Fernando Pineros Rincon; Jill DiGrazio; Helen Kleiner; Loreen Goldstock; Erin Hansell; Donovan Hayes; Joel Hannigan; Matthew Sider; Nicholas Sider; James Idelicato; Karen Kroog; Ryan McNamee; Poke A Nose Inn LLC; Dustin Rex; Samantha Rex; Scott Allen; Roamingwood Investment Group LLC; Daniel Schwartzman; Christopher Serrano; Justin Spall; Troy Coleman; Rose Coleman Campbell; Andrew Fetterman; Robert Hebron; Bradley Kreider; Jennifer Lenzo; Michele McFadden; Pamela Gerolimatos; J. Notaro Construction, LLC; Rafael Poueriet; Samantha Shiffman; Kyle Thompson; Lori Adam; Brian Aranda; Lindsay Alexander; Jayne Avery; Kyle Berger; 92 S LLC; Victoria Hayes; Teresa Kinney; Sean Kinney; Salvatore Cigna; Caterina Cigna and Kalpana Singh-Castillo d/b/a Willow's Place | **CASES CONSOLIDATED** |
| v. | |
| The Association of Property Owners of The Hideout, Inc.; Board of Directors of The Association of Property Owners of The Hideout, Inc.; Richard Yocum, Chairperson; Andrew Miller, President; Louis Delli Santi, Vice President; Gerard Restaino, Treasurer; Richard Guiffredo, Secretary; Michael Terranova, Director; Robert Tressler II, Director; Larry Frotten, Community Manager | |
| Appeal of: Leanna Chan; Otto Chan; Dobenizabe LLC; Desiree Garcia; | |

Fernando Pineros Rincon; Loreen : 
Goldstock; Erin Hansell; Donovan : 
Hayes; Joel Hannigan; Matthew Sider; : 
Nicholas Sider; James Idelicato; Ryan : 
McNamee; Poke A Nose Inn LLC; : 
Dustin Rex; Samantha Rex; Scott Allen; : 
Roamingwood Investment Group LLC; : 
Christopher Serrano; Justin Spall; Troy : 
Coleman; Rose Coleman Campbell; : 
Andrew Fetterman; Bradley Kreider; : 
Jennifer Lenzo; J. Notaro Construction, : 
LLC; Samantha Shiffman; Kyle : 
Thompson; Jayne Avery; 92 S LLC; : 
Victoria Hayes; and Kalpana Singh- :      Nos. 70 & 71 C.D. 2023
Castillo d/b/a Willow's Place :      Argued: June 4, 2024

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MATTHEW S. WOLF, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT            FILED: August 20, 2024

Leanna Chan, Otto Chan, Dobenizabe LLC, Desiree Garcia, Fernando Pineros Rincon, Loreen Goldstock, Erin Hansell, Donovan Hayes, Joel Hannigan, Matthew Sider, Nicholas Sider, James Idelicato, Ryan McNamee, Poke A Nose Inn LLC, Dustin Rex, Samantha Rex, Scott Allen, Roamingwood Investment Group LLC, Christopher Serrano, Justin Spall, Troy Coleman, Rose Coleman Campbell, Andrew Fetterman, Bradley Kreider, Jennifer Lenzo, J. Notaro Construction, LLC, Samantha Shiffman, Kyle Thompson, Jayne Avery, 92 S LLC, Victoria Hayes, and Kalpana Singh-Castillo d/b/a Willow's Place (collectively, Lot Owners) appeal the order of the Court of Common Pleas of Wayne County (trial court) denying their request for declaratory and injunctive relief. Lot Owners challenge actions taken by their homeowners' association to restrict the rental of properties they own in The

2

Hideout, a planned community.[1]  Lot Owners contend that the Declaration of Protective Covenants adopted on May 11, 1970, when The Hideout was established, guaranteed them the right to rent their properties without restriction.  For the reasons that follow, we affirm, in part, and reverse and remand, in part, the trial court's order.

### Background

Lot Owners are record owners of residential lots within The Hideout, which is located in Wayne County, Pennsylvania.  Under the Declaration of Protective Covenants (Declaration), each owner has the right to rent their property.  The Declaration states, in pertinent part, as follows:

> NOW THEREFORE, Declarant declares that *all of the lots and parcels* located within the Development *are held and shall be* held, conveyed, hypothecated or encumbered, leased, *rented*, *used*, occupied and improved, subject to the following declarations . . . .

Declaration, Recitals; Reproduced Record at 50a (R.R. __) (emphasis added).  The Declaration created The Association of Property Owners of The Hideout, Inc. (Association) as a Pennsylvania not-for-profit corporation with the purpose "to promote the common interests of its members, to operate, maintain, repair[,] and replace the Common Areas[,] and to promulgate and enforce rules and regulations governing the *use and enjoyment of the Common Areas*."  Declaration, Section 10.A, C; R.R. 58a (emphasis added).  The Association is governed by its corporate charter,

---

[1] A number of owners of lots in The Hideout, who participated in the litigation before the trial court, filed a praecipe to discontinue their appeal to this Court.  After the briefing schedule was issued, on November 9, 2023, a praecipe to discontinue was filed by Jayne Avery, 92 S LLC, and Loreen Goldstock.  On February 7, 2024, Desiree Garcia and Fernando Pineros Rincon filed a praecipe to discontinue their appeals.  Most recently, on May 15, 2024, a praecipe to discontinue was filed by Troy Campbell, Rose Coleman Campbell, and Erin Hansell.  Accordingly, eight lot owners who names appear in the caption are no longer parties to this appeal.

its bylaws, and the Declaration. The Association has a Board of Directors that is elected by the Association members. Bylaws, Article X, Section 5; R.R. 80a. All property owners in The Hideout are members of the Association. Declaration, Section 10.A; R.R. 58a.

In March of 2022, the Board of Directors notified Association members that it was considering "changes to our current short term rental policies," that would, *inter alia*, limit the number of short-term rentals per year. Complaint, Exhibit C; R.R. 93a. The Board then emailed members a copy of a proposed rule to be "adopted as a Resolution of the Board of Directors." Complaint, Exhibit D; R.R. 94a-95a. At the meeting of March 19, 2022, many Association members, including Lot Owners, voiced their opposition to the proposal.

Thereafter, at a meeting of May 14, 2022, the Board of Directors proposed an amendment to Article IV, Section 9 of the Bylaws, titled "Owner Rental Rights and Restrictions." Complaint, Exhibit G; R.R. 108a. Defining "short-term rental" as "any rental of a single-family dwelling for no more than 28 consecutive overnights," the bylaw amendment proposed to limit short-term rentals to 10 per year. *Id.* The bylaw amendment also proposed to require Association members to enroll in a program before they could offer their properties for short-term rentals and to pay annual fees while so enrolled. *Id.* The Board approved the bylaw amendment and agreed to present it to the membership for vote. The Board scheduled the vote on the bylaw amendment to take place over a 30-day period from May 27, 2022, to June 24, 2022, and allowed members to vote online or by paper ballot, which was mailed to each voting member.

On June 16, 2022, Lot Owners instituted a civil action against the Association; the Board of Directors; Richard Yocum, Chairperson; Andrew Miller,

President; Louis Delli Santi, Vice President; Gerard Restaino, Treasurer; Richard Guiffredo, Secretary; Michael Terranova, Director; Robert Tressler II, Director; and Larry Frotten, Community Manager (collectively, Association Defendants). The complaint contained seven counts:

> Count I - Injunction Restraining and Setting Aside the Proposed Amendment and the Vote
>
> Count II - Equitable Relief to Strike Proposed Amendment as Being in Violation of the Protective Covenants, By-Laws and the Law
>
> Count III - Equitable Relief to Strike Vote as Being in Violation of the Protective Covenants, By-Laws, or the Law
>
> Count IV - Enforcement of Protective Covenants
>
> Count V - Breach of Fiduciary Duty
>
> Count VI - Relief Pursuant to 68 Pa. C.S. § 5101-5414[, Uniform Planned Community Act]
>
> Count VII - Declaratory Judgment

*See* Complaint at 32-46; R.R. 34a-48a. Lot Owners sought (i) a declaratory judgment that the proposed amendment was invalid and in violation of the Declaration and (ii) an injunction to restrain the amendment's enforcement. With their complaint, Lot Owners filed an application for a preliminary injunction to stop the vote on the proposed amendment and to retain the *status quo ante* pending the outcome of the litigation.

On June 21, 2022, the trial court denied Lot Owners' preliminary injunction request. It did so for the stated reason that Lot Owners "failed to show an essential prerequisite for granting the preliminary injunction, namely, that an injunction is necessary to prevent immediate and irreparable harm that cannot be

5

adequately compensated by damages." Trial Court Order, 6/21/2022, at 1 n.1; R.R. 303a.

On June 25, 2022, the Board of Directors announced the outcome of the vote. Of the 2,395 ballots returned, 1,406, or 58.7%, were in favor of the bylaw amendment, and 988, or 41.3%, were opposed. The Board declared the amendment bylaw approved and effective as of January 1, 2023.

On October 6, 2022, Lot Owners filed another application for preliminary injunctive relief, asserting that the bylaw amendment was void and unenforceable because it purported to alter property rights guaranteed by the Declaration, specifically the right to rent their property.[2] Such an alteration can be effected only by an amendment to the Declaration. Lot Owners also asserted that Association Defendants had failed to follow either the procedures required for modification of the Declaration or the procedures for adopting a bylaw amendment. Lot Owners sought an immediate judgment declaring the bylaw amendment to be void *ab initio*.

In their answer, Association Defendants asserted that the bylaw amendment did not prevent Lot Owners from renting their homes; rather, it regulated the number of times they could do so.[3] They also asserted, *inter alia*, that the Declaration limits the use of properties to a single-family use, which was antithetical to short-term rentals.

---

[2] The application was filed pursuant to 15 Pa. C.S. §5793 (relating to review of a contested corporate action), and 68 Pa. C.S. §5114 (relating to judicial enforcement of rights or obligations under the Uniform Planned Community Act).

[3] Association Defendants explained that short-terms rentals of lots within The Hideout have been regulated since 1977, when the Association adopted its rental policy and procedures. That existing policy, *inter alia*, required Association members to obtain Association approval prior to entering a lease. Answer, ¶25; R.R. 440a.

On December 13, 2022, Lot Owners filed a second application for preliminary injunction. They contended that because the bylaw amendment was scheduled to go into effect on January 1, 2023, it was causing them immediate and irreparable harm. In their answer, Association Defendants stated that they would agree to defer implementation of that part of the bylaw amendment limiting the number of short-term rentals until after a ruling was issued in the underlying litigation.

On December 22, 2022, the trial court heard oral argument on Lot Owners' application for declaratory and injunctive relief. At the hearing, Association Defendants stipulated to a stay of that portion of the bylaw amendment limiting short-term rentals to 10 times per year, pending outcome of the litigation. After the hearing, the trial court issued two separate orders denying Lot Owners' application for declaratory relief and their motion for a preliminary injunction.

Lot Owners appealed both orders to this Court.[4] By Order of May 24, 2023, this Court directed the parties to address the appealability of the trial court's order denying a declaratory judgment. Subsequently, on June 15, 2023, Association Defendants filed an application to quash the appeal, arguing that trial court's order was interlocutory and not appealable.

On September 25, 2023, this Court denied the application to quash Lot Owners' appeal. *Chan v. The Association of Property Owners of the Hideout, Inc.* (Pa. Cmwlth., No. 70 C.D. 2023, filed September 25, 2023) (single-judge opinion by Leavitt, S.J.). The opinion explained that Lot Owners' application was the

---

[4] Lot Owners' appeal of the trial court's denial of declaratory relief is docketed at No. 70 C.D. 2023, and their appeal of the denial of a preliminary injunction is docketed at No. 71 C.D. 2023. On October 4, 2023, this Court filed an Order consolidating Lot Owners' appeals, docketed at Nos. 70 C.D. 2023 and 71 C.D. 2023.

functional equivalent of a motion for summary judgment on the request for declaratory relief. *Id.*, slip op. at 12. As such, the trial court's order thereon was final and appealable.[5] The trial court's order resolved the entirety of Lot Owners' request for declaratory relief in favor of Association Defendants by holding the bylaw amendment to be valid under the Nonprofit Corporation Law of 1988, 15 Pa. C.S. §§5101-6162, and the Uniform Planned Community Act, 68 Pa. C.S. §§5101-5414.

## Appeal

On appeal,[6] Lot Owners raise three arguments, which we combine into two for purposes of clarity. First, Lot Owners argue that the trial court erred in denying their request for a preliminary injunction because they satisfied all the elements for such an injunction. Second, Lot Owners argue that the trial court erred in denying their application for declaratory relief because the Declaration guaranteed them an unrestricted right to rent their property.

## Association Governing Documents

The Declaration provides, in pertinent part:

> NOW THEREFORE, Declarant declares that *all of the lots* and parcels *located within the Development are held and shall be*

---

[5] The trial court's order denying Lot Owners' preliminary injunction is appealable to this Court as of right pursuant to PA. R.A.P. 311(a)(4) (providing that an appeal may generally be taken as of right from an order that grants or denies an injunction).

[6] In an appeal from a decree granting or denying a preliminary injunction, this Court determines whether there are reasonable grounds for the action of the court below or whether the rule of law relied on was erroneous or misapplied. *Nunemacher v. Borough of Middletown*, 759 A.2d 57, 60 n.4 (Pa. Cmwlth. 2000) (citations omitted).

As to the denial of declaratory relief, this Court's "review is limited to determining whether the trial court's findings are supported by substantial evidence, whether an error of law was committed, or whether the trial court abused its discretion." *Kelso Woods Association, Inc. v. Swanson*, 692 A.2d 1132, 1134 (Pa. Cmwlth. 1997).

8

*held*, conveyed, hypothecated or encumbered, leased, *rented, used, occupied* and improved, s*ubject to the following declarations*, all of which are declared and agreed to be in furtherance of a plan for the development, improvement and sale of said lots and parcels, and are established for the purpose of enhancing and protecting the value, desirability and attractiveness of the Development as a whole and each of said lots and parcels situated therein.

Declaration, Recitals; R.R. 50a (emphasis added). One such "following declaration" is a provision on land use, which provides as follows:

A. Residential Lots. *No improvement except a Single-family Dwelling and such outbuildings as are usually accessory thereto shall be constructed*, placed or permitted to remain on any Residential Lot. *The following restrictions shall apply specifically to such Lots*:

i. Minimum Area. Each dwelling constructed shall have a fully enclosed floor area (exclusive of roofed or unroofed porches, terraces, garages, carports or other outbuildings) of not less than 750 square feet. In the case of single-story dwellings, all 750 square feet shall be situated on the first floor. In the case of split-level or two-story dwellings, not less than 550 square feet shall be situated on the first floor.

ii. Single-story Construction. Each such dwelling shall be single-story, unless split-level or two-story construction is approved by the Committee.

iii. Set Backs. Except as shown on the Plat, every dwelling shall be at Least:

a. 50 feet from the nearest lake.

b. 25 feet from the front Lot line.

c. 10 feet from each side Lot line.

d. 25 feet from the rear Lot line.

Declaration, Section 4; R.R. 54a-55a (emphasis added). "Single-family Dwelling" is defined as

9

*a residential dwelling* for one or more persons, each related to the other by blood, marriage or legal adoption, or a group of not more than 3 persons not so related, together with his or her domestic servants, maintaining a common household in such dwelling.

Declaration, Section 1.L; R.R. 52a (emphasis added).

The Declaration may be amended either by the Declarant or by a vote of two-thirds of the record owners. Specifically, the Declaration states as follows:

Term and Amendment. The provisions of this Declaration affect and run with the land and shall exist and be binding upon all parties claiming an interest in the Development until April 30, 2000, after which time the same shall be deemed extended for successive periods of 10 years each unless, prior to the expiration of the current term, an instrument signed by a majority of the then record Owners of all Lots agreeing to change the provisions hereof in whole or in part, effective upon expiration of the then current term, shall be duly recorded in the Office of the Recorder of Deeds of Wayne County, Pennsylvania. Except as provided in the immediately preceding sentence, *this Declaration may be amended or supplemented* only by Declarant, to the extent specifically authorized in this Declaration, or *by the vote of the then record Owners of two-thirds of all Lots*.

Declaration, Section 15; R.R. 59a (emphasis added).

Regarding the powers and purposes of the Association, the bylaws state:

This Corporation shall have the purposes or powers as may be stated in its Articles of Incorporation, and such powers as are now, or may be granted hereafter by the Non-Profit Corporation Law of 1972 of the Commonwealth of Pennsylvania, or any successor legislation. The primary purposes of this Corporation are:

a) To assist in the establishment and promotion of a planned unit residential development designed for healthful and harmonious living.

10

b) To promote, assist, and encourage the collective interest of all members in the Development.

c) To promote and assist in the establishment, care and maintenance of improvements to the common property and any facilities of any kind dedicated to the use and enjoyment of the Development which now exists or which may hereafter be installed or constructed.

d) *To regulate the use, maintenance, repair, restoration, replacement and modification of common property in the Development.*

e) To assist and cooperate with the members of all lots, improved and unimproved, for the purpose of promoting and maintaining the natural beauty of the physical environment in the Development so that the value of property will not be impaired or adversely affected by nuisances or other property conditions detrimental to the health and welfare of the members, and to take such action as may be desirable and necessary to prevent or abate such conditions as may be consistent with the Bylaws, the Declaration of Protective Covenants, and the applicable law.

f) To aid and cooperate with members of the Association in the Development, in the enforcement of such conditions, covenants, and restrictions on and appurtenant to their property as are now in existence, as well as any other conditions, and restrictions as shall hereafter may be approved and adopted.

g) To exercise any and all rights, privileges and authority that may be delegated to it from time to time by the members of the Association.

h) In general to do everything necessary and proper for the accomplishment of the purposes hereinabove set forth.

Bylaws, Article III, Section 1; R.R. 66a-67a (emphasis added).

To amend the bylaws, "written consent of members in good standing via mail referendum" is required. Bylaws, Article XIV; R.R. 90a. "The result of the

11

referendum will be determined by a simple majority of the eligible ballots received by the return deadline." *Id*.

## Analysis

### I. Preliminary Injunction

In their first issue, Lot Owners assert that the trial court erred and abused its discretion in denying their emergency request for an injunction because they established all the elements necessary for such an injunction.[7] Absent this relief, Lot Owners contend that they will suffer immediate and irreparable harm because the bylaw amendment purports to deprive them of a vested right to rent their properties without restriction. This is a harm that cannot be compensated by money damages. Association Defendants respond that because Lot Owners remain able to use their properties for short-term rentals until the litigation has concluded, there is no need to preserve the *status quo* with a preliminary injunction.

An appellate court reviews the grant or denial of a preliminary injunction for abuse of discretion. *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1000 (Pa. 2003). Under this standard, the appellate court does not inquire into the merits of the controversy but examines the record only "to determine if there were any apparently reasonable grounds for the action of the court below." *Mazzie v. Commonwealth*, 432 A.2d 985, 988 (Pa. 1981) (quotations omitted). "Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [trial court]." *Id*.

---

[7] In their brief, Lot Owners identify the trial court's June 22, 2022, order, denying their first request for preliminary injunctive relief as an "Order Under Review." *See* Lot Owners' Brief at 2, 28. However, Lot Owners did not timely appeal that order. The only injunction order before this Court is the trial court's order of December 22, 2022.

12

A preliminary injunction preserves the *status quo ante* and prevents imminent and irreparable harm that might otherwise occur before the merits of the case can be determined. *Berger By and Through Berger v. West Jefferson Hill School District*, 669 A.2d 1084, 1085 (Pa. Cmwlth. 1995). The essential prerequisites of a preliminary injunction follow: (1) The injunction is necessary to prevent immediate and irreparable harm not compensable in money damages; (2) Greater injury will result from refusing the injunction than from granting it; (3) The injunction restores the parties to *status quo ante*; (4) The moving party's right to relief is clear; (5) The alleged wrong is manifest, and the injunction is reasonably suited to abate it; and (6) The injunction will not adversely affect the public interest. *See Summit Towne Centre*, 828 A.2d at 1001. Because the moving party must have a clear right to relief, "the moving party [must] be able to show that he has a reasonable likelihood of success on the merits." *Lewis v. City of Harrisburg*, 631 A.2d 807, 810 (Pa. Cmwlth. 1993).

At the hearing of December 22, 2022, Lot Owners' counsel stated "that most of this can be determined, if not all of it, can be determined as a matter of law on the face of the documents, as far as an injunction is concerned, a preliminary injunction." Hearing Transcript, 12/22/2022, at 28 (H.T. __); R.R. 1131a. Lot Owners explained that although the bylaw amendment will not be enforced during the pendency of this litigation, there is still irreparable harm. This is because the bylaw imposes a fee upon those members who rent their property. However, homeowner fees are required to be uniform. *See* Declaration, Section 10.D; R.R. 58a (uniform annual charge may be levied against each residential lot). Association Defendants respond that Lot Owners can seek a return of these fees in the event they prevail in their challenge to the bylaw amendment.

13

The trial court agreed with Association Defendants. It held that money damages would fully address the harm identified by Lot Owners with respect to the fees they challenge. On this rationale, the trial court denied the request for a preliminary injunction.

We conclude that the trial court had "apparently reasonable grounds" to deny Lot Owners' request for a preliminary injunction. *Mazzie*, 432 A.2d at 988. It concluded that so long as the litigation was pending, Lot Owners were free to engage in as many short-term rentals as they like. Further, in the event Lot Owners prevail in this litigation, they can recover any fees paid to the Association under authority of the bylaw amendment.[8] Stated otherwise, Lot Owners could not establish the existence of immediate or irreparable harm, prerequisites for a preliminary injunction. Accordingly, we reject Lot Owners' challenge to the trial court's denial of a preliminary injunction.

## II. Declaratory Relief

In their second issue, Lot Owners argue that the trial court erred in denying their application to have the bylaw amendment declared void *ab initio*. Lot Owners contend that the Declaration authorizes them to rent their properties free of any restriction. In addition, the Declaration does not authorize the Board of Directors to impose any fee other than a "uniform annual charge" upon all members.

---

[8] Irreparable harm can be established by showing a violation of a statute. *See, e.g.*, *Council 13, American Federation of State, County and Municipal Employees, AFL-CIO v. Casey*, 595 A.2d 670, 674 (Pa. Cmwlth. 1991). Lot Owners argue that the bylaw amendment is Association Defendants' "effort to end-run the stringent requirements for an amendment of the [Declaration]" in violation of Section 5219(a)(1) of the Uniform Planned Community Act, 68 Pa. C.S. §5219(a)(1). Lot Owners Brief at 52. However, Section 5219(a)(1) establishes the number of votes needed to amend a declaration. It does not relate to the question here, *i.e.*, whether a limitation on short-term rentals required a declaration amendment. Lot Owners' argument does not demonstrate the clear violation of statute needed to demonstrate irreparable harm.

Lot Owners' Brief at 38. In these two ways, the bylaw amendment directly conflicts with the Declaration, which is controlling. Further, Association Defendants did not follow the procedures for amending the Declaration, which, *inter alia*, required a special meeting of the Association. Likewise, the Board did not follow the procedures for amending the Association's bylaws. For example, the bylaw amendment was voted on by email, but a "mailed referendum" is required. Bylaws, Article XIV; R.R. 90a.

Association Defendants respond that the Association has regulated property rentals in The Hideout for the past 47 years. These regulations, *inter alia*, provide occupancy limitations (two persons per bedroom, plus four additional persons) and require a background review of persons seeking to rent. Further, the Declaration restricts the use of residential lots to single-family dwellings, which is inconsistent with a turnover of occupants.[9]

A declaratory judgment determines the rights, status, and other legal relations "whether or not further relief" can be claimed. 43 Pa. C.S. §7532.[10] It has

---

[9] The Association's long-standing regulation of rentals did not operate as a waiver of Lot Owners' ability to challenge the bylaw amendment. The Declaration states:

> The remedies herein specified are cumulative, and the specification of them shall not be taken to preclude an aggrieved party's resort to any other remedy at law or equity. *No delay or failure on the part of an aggrieved party to invoke an available remedy in respect of a violation of any provision of this Declaration shall be held to be a waiver by that party of any right available to him upon the recurrence or continuance of said violation or the occurrence of a different violation.*

Declaration, Section 11.B; R.R. 59a (emphasis added). Thus, the fact that Lot Owners did not challenge the previous restrictions on short-term rentals did not preclude their challenge to the bylaw amendment.

[10] Section 7532 of the Declaratory Judgments Act states, in relevant part, as follows:

> Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be

15

been observed that "[d]eclaratory judgments are nothing more than judicial searchlights, switched on at the behest of a litigant to illuminate an existing legal right, status or other relation." *Doe v. Johns-Manville Corporation*, 471 A.2d 1252, 1254 (Pa. Super. 1984). Stated otherwise, "[t]he purpose of awarding declaratory relief is to finally settle and make certain the rights or legal status of parties." *Geisinger Clinic v. Di Cuccio*, 606 A.2d 509, 519 (Pa. Super. 1992). We review a denial of declaratory relief to determine "whether the trial court's findings are supported by substantial evidence, whether an error of law was committed or whether the trial court abused its discretion." *Yost v. McKnight*, 865 A.2d 979, 982 n.6 (Pa. Cmwlth. 2005).

A planned community declaration is the equivalent of a contract between the members of the homeowners' association and the association itself. *Hilltop Summit Condominium Association v. Hope* (Pa. Cmwlth., No. 4 C.D. 2014, filed July 10, 2014) (unreported),[11] slip op. at 15 (citing *Wrenfield Homeowners Association v. DeYoung*, 600 A.2d 960, 963 (Pa. Super. 1991) (treating homeowner's association declaration as contract between homeowner's association and its members)). When interpreting a contract,

> we attempt to ascertain the intent of the parties and give it effect. When the words of an agreement are clear and unambiguous, the intent of the parties is to be ascertained from the language used

---

claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

42 Pa. C.S. §7532.

[11] An unreported panel decision of this Court, "issued after January 15, 2008," may be cited "for its persuasive value[.]" Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

16

in the agreement, which will be given its commonly accepted and plain meaning.

Additionally, in determining the intent of the contracting parties, all provisions in the agreement will be construed together and each will be given effect. Thus, we will not interpret one provision of a contract in a manner which results in another portion being annulled.

*LJL Transportation, Inc. v. Pilot Air Freight Corporation*, 962 A.2d 639, 647-48 (Pa. 2009) (citations omitted). The construction of a contract presents "a question of law subject to a *de novo* standard of review on appeal." *Wyeth Pharmaceuticals, Inc. v. Borough of West Chester*, 126 A.3d 1055, 1061 n.5 (Pa. Cmwlth. 2015). "On questions of law, this Court's scope of review is plenary." *Id.*

The parties agree that the Declaration expressly authorizes the rental of lots located in The Hideout. Lot Owners contend that this right is unlimited. The Declaration restricts the type of building that can be constructed on a lot but not the building's use. Association Defendants respond that the Declaration limits each property to a single-family use, as provided in its definition of "Single-family dwelling."

Restrictive covenants fall into two categories: building and use restrictions. *Jones v. Park Lane for Convalescents*, 120 A.2d 535, 538 (Pa. 1956). Building restrictions "are concerned with the physical aspect or external appearance of the building[.]" *Id.* Use restrictions involve "the purposes for which the buildings are used, the nature of their occupancy, and the operations conducted therein[.]" *Id.* "A building restriction and a use restriction are wholly independent of one another, and . . . the one is not to be extended so as to include the other unless the intention to do so is expressly and plainly stated[.]" *Schulman v. Serrill*, 246 A.2d 643, 646 (Pa. 1968) (quoting *Jones*, 120 A.2d at 538).

17

A restrictive covenant that addresses only the "type of buildings that may be erected, . . . and [is] silent in regard to the purposes for which the buildings might be used[,]" is solely a building restriction. *Richman v. Mosites*, 704 A.2d 655, 658 (Pa. Super. 1997). For example, "a restriction against the erection of a building other than a 'house' or a 'dwelling house' is a restriction only in regard to the type of construction and not the subsequent use[.]" *Kauffman v. Dishler*, 110 A.2d 389, 391 (Pa. 1955). Language in a covenant that the lot "shall be used only for the purpose of erecting thereon private dwellings" created a building restriction. *Jones*, 120 A.2d at 538 (emphasis in original omitted). To create a use restriction, the "deed's language must squarely address the use or manner of occupation of the property." *Groninger v. Aumiller*, 644 A.2d 1266, 1267 (Pa. Super. 1994). *See also Kauffman*, 110 A.2d at 391 (any restriction on use must be plainly expressed and not left to implication). For example, the language "[a]nd except for such a separate detached, single-family dwelling house to be used for private residential purposes no dwelling house or any other structure shall be erected on any one of the said lots" created a use restriction. *Crayder v. Seidman*, 87 Pa. D. & C. 118, 122 (1954) (emphasis in original omitted).

A restrictive covenant can manifest an intention to restrict both construction and use. *Jones*, 120 A.2d at 538. For example, in *Baumgardner v. Stuckey*, 735 A.2d 1272, 1273 (Pa. Super. 1999) (emphasis added), the covenant provided that "[*n*]*o lot shall be used except for residential purposes*. No building shall be erected, altered, placed or permitted to remain on any lot other than for *residential purposes* and private garages or carports." A covenant was found to state a building and use restriction because the deed provided that "nor shall any building except *one to be used* as a dwelling house of the type and design to *accommodate*

18

*one family only* with garage [] be erected on said lot[.]" *Rieck v. Virginia Manor Company*, 380 A.2d 375, 377 (Pa. Super. 1977) (emphasis added). In *Johnson v. Jones*, 90 A. 649, 650 (Pa. 1914) (emphasis added), the deed provided a building and use restriction because it stated that "nothing but a church or *dwelling house . . . shall ever be erected* upon any part of the said land; [and] none of the structures so erected shall ever be used as a business place, manufactory, or drinking saloon, *or used for any other purpose* than a dwelling house, or its necessary out buildings, or a church[.]"

> Here, Section 4.A of the Declaration states, in relevant part, as follows:
>
> Residential Lots. No improvement except a Single-family Dwelling and such outbuildings as are usually accessory thereto shall be constructed, placed or permitted to remain on any Residential Lot. The following restrictions shall apply specifically to such Lots:
> ****

Declaration, Section 4.A; R.R. 54a. Section 4.A limits the "improvement" that can be "constructed, placed, or permitted to remain on any Residential Lot." *Id*. That improvement is a Single-family Dwelling. Section 4.A enumerates the "restrictions" that apply "specifically to such Lots," and they all relate to dwelling size and setbacks. *Id*. There is no "restriction" placed "specifically" on the use of "such Lots." At the same time, the Declaration expressly authorizes the rental of "all of the lots." Declaration, Recitals; R.R. 50a.

Association Defendants rely solely upon the Declaration's definition of "Single-family Dwelling." They believe that definition "evidences that the drafters of the [Declaration] intended that the land only be used and occupied as single-family dwellings." Association Defendants' Brief at 17. Otherwise, "there would

19

have been no need to include a definition of "Single-family Dwelling."  Association Defendants Brief at 16.  We are not persuaded.

"Single-family Dwelling" is defined as "*a residential dwelling* for one or more persons, each related to the other by blood, marriage or legal adoption, or a group of not more than 3 persons not so related, together with his or her domestic servants, maintaining a common household in such dwelling."  Declaration, Section 1.L; R.R. 52a (emphasis added).  The definition clarifies that the building to be constructed must be one that can accommodate a family of one or more persons or three unrelated adults.  The building cannot be so large that it can accommodate 20 unrelated adults in separate bedrooms.  The definition does not "squarely address" the "manner of occupation of the property."  *Groninger*, 644 A.2d at 1267.  Indeed, a definition is not the place to state a substantive legal requirement.

The term "use" or "purpose" does not appear in either the definition or in Section 4.A of the Declaration.  As our Supreme Court has explained, "[i]f any restriction on use is intended it should be plainly expressed and not left to implication."  *Jones*, 120 A.2d at 539 (citing *Kauffman*, 110 A.2d at 391).  Here, the only "restrictions" stated relate to construction.  Declaration, Section 4.A, R.R. 54a.  The definition of "Single-family Dwelling" pertains solely to the physical aspects of the building and not its use.  *Cf. Johnson*, 90 A. 649 (specifying specific uses of a residential building not allowed, such as a saloon).

The bylaw amendment sought to regulate short-term rentals, but authorization for such regulation is not provided in the Declaration.  Where there is

a conflict between the declaration and the bylaws, the declaration prevails. 68 Pa. C.S. §5203(c).[12] This renders the bylaw amendment void and unenforceable.

Accordingly, we reverse the order of the trial court and remand the matter to the trial court with directions to enter declaratory judgment in favor of Lot Owners.[13] *See generally Seda-Cog Joint Rail Authority v. Carload Express, Inc.*, 185 A.3d 1232 (Pa. Cmwlth. 2018) (lower court's order reversed and matter remanded for entry of summary judgment in favor of appellant in a declaratory judgment suit); *Nationwide Mutual Insurance Company v. Insurance Company of North America*, 462 A.2d 827 (Pa. Super. 1983) (reversing and remanding order from lower court with directions to enter declaratory judgment in favor of appellant).

---

[12] It states, in relevant part, as follows:

> **Conflict between declaration and bylaws.--**If there is a conflict between the declaration and the bylaws, the declaration shall prevail except to the extent the declaration is inconsistent with this subpart.

68 Pa. C.S. §5203(c).

[13] Having concluded that Association Defendants were not authorized to adopt the bylaw amendment restricting rentals, we need not address Lot Owners' other arguments that Association Defendants bypassed the procedures for an amendment to the Declaration, the Board's failure to provide members adequate notice of the May 14, 2022, meeting, and the Board's failure to obtain written consent of members in good standing to amend the bylaw by mailed referendum.

## Conclusion

For the above-stated reasons, we affirm the trial court's order denying Lot Owners' emergency motion for a preliminary injunction. We reverse the trial court's order denying Lot Owners' request for declaratory relief and remand the matter to the trial court with directions to enter a declaratory judgment in favor of Lot Owners that the bylaw amendment on short-term rentals is void and unenforceable.

_____
MARY HANNAH LEAVITT, President Judge Emerita

22

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Leanna Chan; Otto Chan; Sigrid DaVeiga; Dobenizabe LLC; Desiree Garcia; Fernando Pineros Rincon; Jill DiGrazio; Helen Kleiner; Loreen Goldstock; Erin Hansell; Donovan Hayes; Joel Hannigan; Matthew Sider; Nicholas Sider; James Idelicato; Karen Kroog; Ryan McNamee; Poke A Nose Inn LLC; Dustin Rex; Samantha Rex; Scott Allen; Roamingwood Investment Group LLC; Daniel Schwartzman; Christopher Serrano; Justin Spall; Troy Coleman; Rose Coleman Campbell; Andrew Fetterman; Robert Hebron; Bradley Kreider; Jennifer Lenzo; Michele McFadden; Pamela Gerolimatos; J. Notaro Construction, LLC; Rafael Poueriet; Samantha Shiffman; Kyle Thompson; Lori Adam; Brian Aranda; Lindsay Alexander; Jayne Avery; Kyle Berger; 92 S LLC; Victoria Hayes; Teresa Kinney; Sean Kinney; Salvatore Cigna; Caterina Cigna and Kalpana Singh-Castillo d/b/a Willow's Place | : : : : : : : : : : : : : : : : : : : : : : : : : : : | **CASES CONSOLIDATED** |
| v. | : : | |
| The Association of Property Owners of The Hideout, Inc.; Board of Directors of The Association of Property Owners of The Hideout, Inc.; Richard Yocum, Chairperson; Andrew Miller, President; Louis Delli Santi, Vice President; Gerard Restaino, Treasurer; Richard Guiffredo, Secretary; Michael Terranova, Director; Robert Tressler II, Director; Larry Frotten, Community Manager | : : : : : : : : : : : | |

| | |
|---|---|
| Appeal of: Leanna Chan; Otto Chan; | : |
| Dobenizabe LLC; Desiree Garcia; | : |
| Fernando Pineros Rincon; Loreen | : |
| Goldstock; Erin Hansell; Donovan | : |
| Hayes; Joel Hannigan; Matthew Sider; | : |
| Nicholas Sider; James Idelicato; Ryan | : |
| McNamee; Poke A Nose Inn LLC; | : |
| Dustin Rex; Samantha Rex; Scott Allen; | : |
| Roamingwood Investment Group LLC; | : |
| Christopher Serrano; Justin Spall; Troy | : |
| Coleman; Rose Coleman Campbell; | : |
| Andrew Fetterman; Bradley Kreider; | : |
| Jennifer Lenzo; J. Notaro Construction, | : |
| LLC; Samantha Shiffman; Kyle | : |
| Thompson; Jayne Avery; 92 S LLC; | : |
| Victoria Hayes; and Kalpana Singh- | : |
| Castillo d/b/a Willow's Place | :  Nos. 70 & 71 C.D. 2023 |

# **O R D E R**

AND NOW, this 20th day of August, 2024, the December 22, 2022, order of the Court of Common Pleas of Wayne County denying the emergency motion for preliminary injunction filed by Leanna Chan, Otto Chan, Dobenizabe LLC, Desiree Garcia, Fernando Pineros Rincon, Loreen Goldstock, Erin Hansell, Donovan Hayes, Joel Hannigan, Matthew Sider, Nicholas Sider, James Idelicato, Ryan McNamee, Poke A Nose Inn LLC, Dustin Rex, Samantha Rex, Scott Allen, Roamingwood Investment Group LLC, Daniel Schwartzman, Christopher Serrano, Justin Spall, Troy Coleman, Rose Coleman Campbell, Andrew Fetterman, Bradley Kreider, Jennifer Lenzo, J. Notaro Construction, LLC, Samantha Shiffman, Kyle Thompson, Jayne Avery, 92 S LLC, Victoria Hayes, and Kalpana Singh-Castillo d/b/a Willow's Place (collectively, Lot Owners), is AFFIRMED.

The December 22, 2022, order of the Court of Common Pleas of Wayne County denying Lot Owners' application for relief is REVERSED. This matter is remanded to the trial court for entry of a declaratory judgment in favor of Lot Owners that The Association of Property Owners of The Hideout, Inc.'s bylaw amendment on short-term rentals is void and unenforceable.

Jurisdiction is relinquished.

_____
MARY HANNAH LEAVITT, President Judge Emerita